# Matter of D-K-, Respondent

*Decided April 12, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An alien who is a refugee under section 207 of the Immigration and Nationality Act, 8 U.S.C. § 1157 (2006), and has not adjusted status to that of a lawful permanent resident may be placed in removal proceedings without a prior determination by the Department of Homeland Security that the alien is inadmissible to the United States. *Matter of Garcia-Alzugaray*, 19 I&N Dec. 407 (BIA 1986), distinguished.

(2) When removal proceedings are initiated against an alien who has been "admitted" to the United States as a refugee, the charges of removability must be under section 237 of the Act, 8 U.S.C. § 1227 (2006), rather than section 212 of the Act, 8 U.S.C. § 1182 (2006).

FOR RESPONDENT: Kara Hartzler, Esquire, Florence, Arizona

FOR THE DEPARTMENT OF HOMELAND SECURITY: Victoria Levin, Assistant Chief Counsel

BEFORE: Board Panel: COLE, PAULEY, and WENDTLAND, Board Members.

PAULEY, Board Member:

The respondent, who is a refugee, has appealed from the June 2, 2011, decision of the Immigration Judge finding him removable, denying his applications for relief, and ordering him removed from the United States. We hold that a refugee who has not adjusted status to that of a lawful permanent resident may be placed in removal proceedings without a prior determination by the Department of Homeland Security ("DHS") that the alien is inadmissible to the United States. However, we also determine that because such an alien was "admitted" to the United States as a refugee, he or she must be charged in the notice to appear under section 237 of the Immigration and Nationality Act, 8 U.S.C. § 1227 (2006), rather than section 212 of the Act, 8 U.S.C. § 1182 (2006). The appeal will be sustained in part and dismissed in part, and the record will be remanded to the Immigration Judge for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Macedonia who entered the United States as a refugee on March 16, 1998.  The record reflects that he applied for adjustment of status with the DHS in 2005 but that after his interview, he failed to submit documentation requested regarding his criminal history, so his application was denied on May 12, 2006.  On June 22, 2009, the respondent was convicted of distribution of cocaine within 1,000 feet of a public secondary school in violation of 21 U.S.C. § 860 (2006), for which he was sentenced to 24 months in prison.

On October 8, 2010, the DHS issued a notice to appear charging that the respondent is an alien who has been admitted but is removable under section 237(a)(2)(A)(iii) of the Act based on his conviction for an aggravated felony relating to the illicit trafficking of a controlled substance under section 101(a)(43)(B) of the Act, 8 U.S.C. § 1101(a)(43)(B) (2006). However, on January 13, 2011, the DHS withdrew the charge and filed a Form I-261 (Additional Charges of Inadmissibility/Deportability) with the Immigration Court charging that the respondent is inadmissible under sections 212(a)(2)(A)(i)(I) and (II) of the Act as an alien convicted of a crime involving moral turpitude and a controlled substance violation.  The DHS filed a second Form I-261 on May 3, 2011, charging the respondent under section 212(a)(2)(C) of the Act as an alien who the consular officer or Attorney General knows or has reason to believe is a controlled substance trafficker.

The Immigration Judge sustained all three charges lodged under section 212 of the Act, found the respondent statutorily ineligible for both a waiver under section 209(c) of the Act, 8 U.S.C. § 1159(c) (2006), and adjustment of status, and denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture").

On appeal, the respondent asserts that the Immigration Judge should have terminated his removal proceedings.  First, he argues that the Immigration Judge did not have jurisdiction over these proceedings because in *Matter of Garcia-Alzugaray*, 19 I&N Dec. 407 (BIA 1986), we held that an alien who is a refugee may not be placed in immigration proceedings until there is a prior determination by the DHS that the alien is inadmissible to the United States for purposes of adjustment of status.  Second, he contends that since the notice to appear alleges that he was "admitted" to the United States as a refugee, he was improperly charged under the inadmissibility provisions of section 212 of the Act.

## II.  ANALYSIS

Section 207(c)(1) of the Act, 8 U.S.C. § 1157(c)(1) (2006), states that the Attorney General may admit any refugee who is not firmly resettled in any foreign country, is determined to be of special humanitarian concern to the United States, and is admissible as an immigrant.  Refugee status may be terminated under section 207(c)(4) of the Act if the Attorney General determines that at the time of the alien's admission he or she was not, in fact, a "refugee" as defined by the Act.[1]  *See* 8 C.F.R. § 207.9 (2011).

Furthermore, under the adjustment of status procedures at section 209(a)(1) of the Act, an alien whose refugee status has not been terminated and who has been physically present in the United States for at least 1 year shall return or be returned to the custody of the DHS for inspection and examination for admission as an immigrant.  *See also* 8 C.F.R. § 209.1(a)(1) (2011).  If the alien is found to be admissible, he or she shall be regarded as a lawful permanent resident as of the date of his or her arrival in the United States.  Section 209(a)(2) of the Act.  However, if the alien is found inadmissible, he or she may renew the application for adjustment of status before an Immigration Judge during removal proceedings under section 240 of the Act, 8 U.S.C. § 1229a (2006).  *See* 8 C.F.R. § 209.1(e).

In this case, neither party maintains on appeal that the respondent was not a refugee under section 101(a)(42) of the Act at the time he was admitted in 1998.  Rather, the respondent relies on *Matter of Garcia-Alzugaray* to argue that the DHS was *required* to make an inadmissibility determination before placing him in removal proceedings.  The respondent contends that although the DHS denied his application for adjustment of status, the denial was based on his failure to provide additional documentation, not his inadmissibility to the United States.

### A.  Inadmissibility Determinations by the DHS

In *Matter of Garcia-Alzugaray*, we found that the alien's exclusion proceedings were improperly commenced because, prior to their initiation, the former Immigration and Naturalization Service failed to terminate the alien's

---

[1] A "refugee" is defined under section 101(a)(42) of the Act, in part, as

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

refugee status or determine him to be inadmissible as an immigrant after examination under oath by an immigration officer pursuant to the Act and the regulations. In that case we addressed the original implementing regulations for section 209(a) of the Act, which was enacted as part of the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102. At that time the regulations provided that after 1 year, refugees were to appear before an immigration officer for examination under oath to determine their eligibility for permanent residence. 8 C.F.R. §§ 209.1(a)(1), (b) (1986). However, these regulations have since been amended to streamline the adjustment process, making the decision whether to interview a refugee seeking permanent resident status a discretionary determination for the DHS. *See* 8 C.F.R. § 209.1(d) (1999); *see also* Adjustment of Status of Refugees and Asylees; Processing Under Direct Mail Program, 63 Fed. Reg. 30,105, 30,109 (June 3, 1998). Consequently, we are not persuaded by the respondent's arguments that *Matter of Garcia-Alzugaray* is determinative here.[2]

Furthermore, neither section 209 of the Act nor the regulations explicitly state that termination of refugee status is necessary before an alien is placed in removal proceedings under section 240 of the Act. In *Matter of Smriko*, 23 I&N Dec. 836, 837 (BIA 2005), we ruled that a refugee who had adjusted status could be placed in removal proceedings even though his status as a refugee was never terminated. Specifically, we found that 8 C.F.R. § 209.1(e) (2005) did not require termination of refugee status before the commencement of removal proceedings under section 240 of the Act. *Id.* at 839-40. Thus, interpreting the language of the Act and the regulations, we concluded in *Matter of Smriko* that Congress did not consider termination of refugee status to be a prerequisite to the initiation of removal proceedings against refugees. 23 I&N Dec. at 838. Moreover, in *Kaganovich v. Gonzales*, 470 F.3d 894, 898 (9th Cir. 2006), the United States Court of Appeals for the

---

[2] Although the respondent cites to an unpublished Board decision in which we applied *Matter of Garcia-Alzugaray*, that alien was in exclusion proceedings, and unpublished decisions do not constitute binding precedent. *See Matter of Echeverria*, 25 I&N Dec. 512, 519 (BIA 2011); *see also* 8 C.F.R. § 1003.1(g) (2011) ("By majority vote of the permanent Board members, selected decisions of the Board rendered by a three-member panel . . . may be designated to serve as precedents in all proceedings involving the same issue or issues."). The respondent also cites *Romanishyn v. Attorney General of the United States*, 455 F.3d 175, 182 (3d Cir. 2006), in support of his argument that he is not subject to removal proceedings. However, that case was issued by the United States Court of Appeals for the Third Circuit, which does not have jurisdiction here, and it does not squarely address the issue raised by the respondent, namely, whether a refugee may be placed in removal proceedings without a prior finding of inadmissibility by the DHS.

Ninth Circuit, which has jurisdiction over the respondent's case, deferred to our interpretation of the Act and regulations in *Matter of Smriko*.

On appeal, the respondent does not dispute that an alien who is a refugee may be placed in removal proceedings without the prior termination of his or her refugee status. Instead, he argues that because Smriko and Kaganovich were refugees who had adjusted status, which he has not, their removal proceedings were proper since the DHS had previously found them admissible to the United States in granting them permanent resident status. However, neither *Smriko* nor *Kaganovich* holds that an admissibility determination by the DHS is a preliminary step to the initiation of removal proceedings. Furthermore, we observed in *Matter of Smriko* that section 239 of the Act, 8 U.S.C. § 1229 (2000), which governs the commencement of removal proceedings, refers to "the alien" and does not distinguish between aliens who are refugees and other aliens. 23 I&N Dec. at 838.

Accordingly, we conclude that removal proceedings were properly initiated against the respondent without a prior determination by the DHS that he was inadmissible to the United States and that the Immigration Judge therefore had jurisdiction to adjudicate these proceedings. The respondent's appeal in this regard will be dismissed.

### B. Removal Charges Under Section 212 of the Act

Although it was appropriate for the DHS to initiate removal proceedings, we agree with the respondent that he was improperly charged in the notice to appear with inadmissibility under section 212 of the Act. We hold that because the respondent was "admitted" to the United States as a refugee, any charges should have been brought under the grounds of deportability in section 237.

Section 237(a) of the Act states that any alien in and "admitted" to the United States shall be removed if the alien falls within one or more specific enumerated classes of deportable aliens.[3] Under section 101(a)(13)(A), the terms "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." The burden is on the DHS to show by clear and convincing evidence

---

[3] The requirement that an alien be "admitted" to the United States in order to be subject to the deportability grounds was added to the statute by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), for proceedings commenced on or after April 1, 1997. Prior to enactment of the IIRIRA, the deportation grounds, which then appeared at former section 241 of the Act, 8 U.S.C. § 1251 (1994), provided only for applicability to aliens "in" the United States.

that an alien who has been admitted to the United States is deportable. Section 240(c)(3)(A) of the Act.

With regard to refugees, the language of both the Act and the regulations states that they are "admitted" to the United States. Section 207(a) of the Act addresses the annual "admission" of refugees into the United States. Section 207(c)(1) indicates that the Attorney General may "admit" refugees to the United States in his discretion, and section 207(c)(3) provides for a waiver of inadmissibility for aliens seeking "admission" to the United States as refugees. Moreover, section 212(d)(5)(A) of the Act discusses parole of aliens into the United States and states that it "shall not be regarded as an admission," and section 212(d)(5)(B) provides that an alien who is a refugee may not be paroled unless there are compelling reasons in the public interest requiring that he or she be paroled, rather than "admitted" as a refugee under section 207 of the Act.

Under the regulations, an alien who believes he or she is a refugee may apply for "admission" to the United States by filing a Form I-590 (Registration for Classification as Refugee) with the DHS or consular office in the area where he or she is located. *See* 8 C.F.R. §§ 207.1(a), 207.2(a) (2011). The overseas office is then delegated authority to determine the alien's admissibility as an immigrant. *See* 8 C.F.R. § 207.3 (2011). Although an initial admissibility determination may be more lenient for refugees than it is for other aliens because some of the inadmissibility provisions are not applicable to refugees and others may be waived under section 207(c)(3), the Act and the regulations still contemplate that refugees are "admitted" to the United States, albeit in the Attorney General's discretion. Thereafter, an approved Form I-590 allows the alien to be "admitted" conditionally as a refugee at a port of entry in the United States within 4 months of the date the form is approved. *See* 8 C.F.R. § 207.4 (2011). Finally, an alien who is "admitted" as a refugee must accrue 1 year of physical presence within the United States from the date he or she entered before applying for adjustment of status under section 209(a)(1) of the Act. *See* 8 C.F.R. § 207.8 (2011).

Prior to 1997, the regulations stated that upon termination of an alien's refugee status or a determination that he or she is inadmissible, the alien was subject to exclusion proceedings under former sections 235, 236, and 237 of the Act, 8 U.S.C. §§ 1225, 1226, and 1227 (1994). *See* 8 C.F.R. §§ 207.8, 209.1(a) (1997); *see also* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,337, 10,346 (Mar. 6, 1997). However, in their current form, the regulations provide that upon termination of refugee status, the alien is to be placed in removal proceedings under section 240 of the Act, without regard to whether the alien should be charged under section 212 or section 237 of the Act. *See* 8 C.F.R. §§ 207.9, 209.1(e).

In *Matter of Jean*, 23 I&N Dec. 373, 374 n.4 (A.G. 2002), the Attorney General stated in a footnote that the alien, who was a refugee, was not paroled or permanently admitted into the United States and that she was conditionally admitted as a refugee, thereby deferring her admissibility inspection and examination by Federal immigration officials. *See* 8 C.F.R. § 207.4. As support for this footnote, the Attorney General cited *Matter of Garcia-Alzugaray*, 19 I&N Dec. at 408-10. There, we had noted that under prior versions of the Act, refugees had "conditional entrant" status but that in enacting the Refugee Act of 1980, Congress replaced this with refugee status, thus allowing refugees conditional admission for later adjustment to permanent residence, and it specifically rejected prior proposed Senate language that would have admitted refugees as lawful permanent residents upon entry. *Id.* at 408. As a result, while Jean's inspection and examination for lawful permanent resident status may have been deferred for 1 year, we do not read the Attorney General's footnote or *Matter of Garcia-Alzugaray* as a pronouncement that inspection and authorization by an immigration officer did not precede the respondent's initial admission as a refugee under section 207(c)(1) of the Act.[4]

We acknowledge the *conditional* nature of a refugee's status. However, the fact that a refugee admission is impermanent and subject to contingencies does not resolve the question whether it nevertheless qualifies as a kind of "admission" for purposes of the applicability of the deportability grounds at section 237(a) of the Act. That question was not resolved in either *Matter of Jean*—in which the applicability of the inadmissibility grounds was not contested, *see supra* note 4—or *Matter of Garcia-Alzugaray*—which applied previous statutory and regulatory provisions that did not yet focus on the concept of "admission" and that (in the case of the regulations) expressly provided that aliens whose refugee status had been terminated were subject to exclusion proceedings.

We also recognize that the concept of a "conditional admission" is not without ambiguity. The proposition that such a status does not qualify as a "true" admission, which can require the bringing of charges on deportability rather than inadmissibility grounds, has some persuasive force. But if a refugee has not been "admitted," and also has not been paroled in view

---

[4] As the Attorney General's opinion observed, Jean did not contest her inadmissibility as charged under section 212(a)(2)(A)(i)(I) of the Act, as an alien convicted of a crime involving moral turpitude. *See Matter of Jean*, 23 I&N Dec. at 375-76. Thus, there was no occasion in Jean's case to consider the question whether the charge against her was properly brought under the inadmissibility rather than the deportability provisions of the Act.

of the restrictive language at section 212(d)(5) of the Act as discussed above, then the nature of his or her status becomes unclear. Section 212(a)(6)(A)(i) of the Act, as amended by the IIRIRA, provides that aliens who are present in the United States without having been either admitted or paroled are inadmissible, thereby presumably possessing *no* legal status. That provision does not appear to contemplate a third possible category, consisting of aliens who, despite having been neither admitted nor paroled, are authorized to be present in the United States as refugees. And if this conundrum is to be resolved by construing the word "admitted" in section 212(a)(6)(A)(i) to encompass conditional refugee admissions, then it is difficult to fathom why the same construction would not be afforded to the same word as used in the language describing the applicability of the deportability provisions at section 237(a). "As a rule, a single statutory term should be interpreted consistently." *Matter of Alyazji*, 25 I&N Dec. 397, 404 (BIA 2011) (citing *Clark v. Martinez*, 543 U.S. 371, 382 (2005)). To the extent that the pertinent language is ambiguous, we believe that a construction recognizing that a "conditional admission" is nevertheless a form of "admission" for purposes of section 237(a) of the Act would best comport with the overall structure of the statute.

To be sure, our construction effectively envisions that a refugee who ultimately becomes a lawful permanent resident will have been "admitted" twice—first, upon conditional admission under section 207 of the Act, and second, upon reinspection and adjustment to permanent resident status under section 209(a) of the Act—and that after *each* of those admissions, he or she will have been subject to charges under only the deportability grounds, and not the grounds of inadmissibility. But this notion of multiple admissions, with the deportability grounds applying after each admission, is consistent with the approach we have taken in other immigration contexts.

In *Matter of Alyazji*, we reaffirmed our prior case law to the extent it held that aliens who enter the United States as nonimmigrants and then adjust their status to that of a lawful permanent resident have two admissions—first at the border on their nonimmigrant visas, and then again during the adjustment process.[5] Similarly, in *Matter of Sesay*, 25 I&N Dec. 431 (BIA 2011), we addressed the situation of an alien who is admitted as a fiancé(e) of a United States citizen under section 101(a)(15)(K) of the Act and then

---

[5] Indeed, we reaffirmed that the statutory scheme warranted treatment of an adjustment of status as an admission, even though an adjustment does not come within the literal definition of the term "admission" at section 101(a)(13)(A) of the Act. *See Matter of Alyazji*, 25 I&N Dec. at 399-404. In this case, the justification for treating a conditional refugee admission as an "admission" is even stronger because such an admission comes within the statutory definition's reference to a lawful entry into the United States after inspection and authorization by an immigration officer, as discussed above.

(after marriage to the citizen) adjusts status to that of a lawful permanent resident on a conditional basis under section 216 of the Act, 8 U.S.C. § 1186a (2006). In each of these contexts, we treated the alien, at least implicitly, as being subject to the deportation grounds after the first admission, as well as the second (if it occurs at all). *See Matter of Sesay*, 25 I&N Dec. at 432 (noting that an alien who had been admitted as a fiancé visa holder, but who subsequently had been denied adjustment of status, was charged with deportability under section 237(a)(1)(B) of the Act); *Matter of Alyazji*, 25 I&N Dec. at 406-07 (stating that a second admission through adjustment of status "merely extends an existing period of presence that was sufficient in and of itself to support the alien's susceptibility to the grounds of deportation.").

Furthermore, we agree with the respondent that despite the DHS's assertions to the Immigration Judge, *Kaganovich v. Gonzales* does not give the DHS authority to charge him under section 212 of the Act. In that case, Kaganovich, a refugee who had obtained permanent resident status, was stopped at a port of entry as he tried to drive from Mexico back into the United States with another alien who presented false documentation. *Kaganovich v. Gonzales*, 470 F.3d at 896. Thereafter, Kaganovich was placed in removal proceedings and was charged with alien smuggling under section 212(a)(6)(E)(i) of the Act. *See* section 101(a)(13)(C) of the Act. Here, the respondent was not outside the United States attempting to reenter.

Thus, we conclude that under the language of the Act and regulations, and also in view of the context and structure of the provisions at issue, an alien admitted to the United States as a refugee has been "admitted" for purposes of section 101(a)(13)(A) of the Act. Specifically, the alien has made a lawful entry into the United States after inspection and authorization by an immigration officer. Although after 1 year the alien must be reinspected for admission in a different status, that of a lawful permanent resident, this requirement does not undermine his or her initial admission as a refugee under section 207 of the Act. Consequently, the respondent is present in the United States pursuant to a prior admission as a refugee, and any charges in the notice to appear must be based on the grounds of deportability under section 237 of the Act.

Initially, the notice to appear charged that the respondent was "admitted" but removable under section 237(a)(2)(A)(iii) of the Act. However, the DHS subsequently withdrew that charge and filed two Forms I-261 lodging charges of inadmissibility under section 212. The Immigration Judge made alternative findings, concluding not only that the respondent was inadmissible as charged, but also that he was deportable under section 237 of the Act because his conviction was categorically for an aggravated felony under section 101(a)(43)(B). However, since the respondent was not properly charged under section 237 at the time of the Immigration Judge's decision, the alternative

analysis under that section was hypothetical in nature. Therefore, upon our de novo review, we conclude that the Immigration Judge's removability determinations were improper, and we will sustain the respondent's appeal in this regard. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2011).

Furthermore, we recognize the Immigration Judge's extensive analysis regarding the respondent's eligibility for relief from removal. However, the respondent has not been properly charged, and his removability is a threshold determination. As a result, we find that a remand is warranted for the DHS to have an opportunity to amend the notice to appear and for the Immigration Judge to further address the issues of the respondent's removability and his eligibility for relief. Accordingly, the respondent's appeal will be sustained in part and dismissed in part, and the record will be remanded for further proceedings.

**ORDER:** The appeal is sustained in part and dismissed in part.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.