# Matter of V-X-, Respondent

*Decided June 26, 2013*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)　A grant of asylum is not an "admission" to the United States under section 101(a)(13)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(13)(A) (2006).

(2)　When termination of an alien's asylum status occurs in conjunction with removal proceedings pursuant to 8 C.F.R. § 1208.24 (2013), the Immigration Judge should ordinarily make a threshold determination regarding the termination of asylum status before resolving issues of removability and eligibility for relief from removal.

(3)　An adjudication of "youthful trainee" status pursuant to section 762.11 of the Michigan Compiled Laws is a "conviction" under section 101(a)(48)(A) of the Act because such an adjudication does not correspond to a determination of juvenile delinquency under the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031-5042 (2006). *Matter of Devison*, 22 I&N Dec. 1362 (BIA 2000), followed.

FOR RESPONDENT: Marshal E. Hyman, Esquire, Troy, Michigan

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jason A. Ritter, Assistant Chief Counsel

BEFORE: Board Panel: PAULEY, GUENDELSBERGER, and GREER, Board Members.

PAULEY, Board Member:

In a decision dated February 16, 2012, an Immigration Judge found the respondent inadmissible under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2006), as an alien convicted of a crime involving moral turpitude; section 212(a)(2)(A)(i)(II), as an alien convicted of a controlled substance violation; and section 212(a)(2)(C), as an alien who the Attorney General knows or has reason to believe is or has been an illicit trafficker in any controlled substance. The Immigration Judge also found him ineligible for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, adopted and opened for signature Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708

(1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), and ordered him removed from the United States.

The respondent has appealed, arguing that he is neither inadmissible as charged nor ineligible for the requested relief. The respondent's request for oral argument is denied. The appeal will be dismissed in part. The record will be remanded, however, for the Immigration Judge to address the Department of Homeland Security's ("DHS") request to terminate the respondent's asylum status. On remand, the Immigration Judge should also reconsider the respondent's eligibility for asylum, withholding of removal, and adjustment of status in light of the Supreme Court's intervening precedent in *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013).

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Albania who entered the United States in 2003. In 2004, the DHS granted him asylum as a derivative beneficiary of his father's asylum application under section 208(b)(3) of the Act, 8 U.S.C. § 1158(b)(3) (2000).

In 2007 the respondent entered a guilty plea in Michigan to charges that he delivered marijuana, conspired to deliver marijuana, and knowingly kept a vehicle for the purpose of keeping or selling controlled substances in violation of sections 333.7401(2)(d)(iii), 750.157a, and 333.7405(1)(d) of the Michigan Compiled Laws, respectively. As a result of that guilty plea, in January 2008 the respondent was designated a "youthful trainee" under sections 762.11 of the Michigan Compiled Laws, which means that the sentencing court deferred adjudication of his guilt and ordered him to serve a term of rehabilitative probation with an eye to the eventual dismissal of the charges. In August 2008, the respondent was convicted of second-degree home invasion in violation of section 750.110a(3) of the Michigan Compiled Laws, for which he was sentenced to 3 years of probation, including 300 days of probationary incarceration.

Based on the respondent's convictions, the Immigration Judge found him inadmissible to the United States. She also determined that the respondent is ineligible for asylum and withholding of removal on the ground that his drug offense was a "particularly serious crime" under sections 208(b)(2)(A)(ii) and 241(b)(3)(B)(ii) of the Act, 8 U.S.C. § 1231(b)(3)(B)(i) (2006). Finally, the Immigration Judge denied the respondent's application for protection under the Convention Against Torture on the merits and ordered him removed to Albania.

## II.  ANALYSIS

The respondent raises a number of arguments on appeal, of which some pertain to his removability from the United States and others to his eligibility for relief from (or protection against) removal.  We shall address each argument in turn.  However, we find it necessary to first address an important threshold issue that the parties have not discussed on appeal— namely, the termination of the respondent's asylum status.

### A.  Termination of Asylum Status

Because the respondent was granted asylum in 2004, he cannot be removed from the United States unless and until his asylum status is terminated.  Section 208(c) of the Act; *see also Matter of A-S-J-*, 25 I&N Dec. 893, 895 (BIA 2012); 8 C.F.R. § 1208.22 (2013).  The regulations contemplate that termination of an alien's asylum status may occur in conjunction with removal proceedings.  8 C.F.R. § 1208.24(f) (2013).  But ordinarily issues of removability and eligibility for relief from removal should be deferred until a threshold determination is made regarding the termination of asylum status.[1]  We note in this regard that the statutory grounds for termination of asylum status are *narrower* than the grounds of removability.  *Compare* section 208(c)(2) of the Act (grounds for termination of asylum status), *with* sections 212(a) *and* 237(a) of the Act, 8 U.S.C. § 1227(a) (2006) (grounds of removability).

The DHS filed a notice of intent to terminate the respondent's asylum status with the Immigration Judge shortly after filing the notice to appear, and it requested resolution of the termination issue during the course of the respondent's removal proceedings, as contemplated by 8 C.F.R. § 1208.24(f).  However, the Immigration Judge's decision includes no analysis of the termination issue and does not order the respondent's asylum status terminated.  As a result, the Immigration Judge's removal order cannot be executed at this time, and we have no alternative but to remand the record for entry of a new decision with respect to the termination of the respondent's asylum status.

In cases with unresolved questions regarding the termination of asylum status, it may often be advisable for us to remand the record without

---

[1]  As we held in *Matter of K-A-*, 23 I&N Dec. 661 (BIA 2004), an Immigration Judge need not reach the issue of termination of asylum status if the alien is eligible for, and deserving of, some form of relief that would make termination of asylum status moot, such as adjustment of status under section 209 of the Act, 8 U.S.C. § 1159 (2006).

addressing other appellate issues, some of which could be rendered moot depending on whether asylum status is terminated.  On the facts of this case, however, we find it unnecessary to withhold adjudication of all of the respondent's appellate arguments.

## B.  Asylum as an "Admission"

The respondent's first argument is that the removal proceedings should be terminated because the DHS improperly charged him with inadmissibility under section 212(a)(2) of the Act.  According to the respondent, as an alien granted asylum he is subject only to *deportability* charges under section 237(a) of the Act, not *inadmissibility* charges.  In support of that argument, the respondent invokes *Matter of D-K-*, 25 I&N Dec. 761, 765–70 (BIA 2012), which was issued during the pendency of this appeal, where we held in pertinent part that aliens "admitted" to the United States as "refugees" under section 207 of the Act, 8 U.S.C. § 1157 (2006), are susceptible to deportability charges, but not inadmissibility charges.  We find the respondent's argument unpersuasive.

Charges of deportability under section 237(a) of the Act pertain to aliens who are "in and admitted to the United States," a phrase that applies to aliens who have been "admitted" under section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2006), or who have been granted lawful permanent resident status from within the United States.  *See Matter of Alyazji*, 25 I&N Dec. 397, 399 (BIA 2011).  The respondent does not claim that he was ever "admitted" within the meaning of section 101(a)(13)(A).  The Immigration Judge found that the respondent was "paroled" into the United States in 2003,[2] and he does not argue to the contrary on appeal.  Furthermore, the respondent has not adjusted his status to that of a lawful permanent resident.  Accordingly, despite his asylum status, the respondent is not "in and admitted to the United States" within the meaning of section 237(a).  He is therefore properly charged under section 212(a) of the Act.

*Matter of D-K-*, 25 I&N Dec. 761, is inapposite here because it involved an alien who was formally "admitted" into the United States as a "refugee" after inspection at a port of entry in accordance with sections 101(a)(13)(A) and 207 of the Act.  The respondent, who was granted asylum from within the United States after entering on parole, was never admitted as a refugee.  Moreover, although the respondent's grant of asylum conferred a lawful status upon him, it did not entail an "admission."

---

[2] Parole is not an "admission."  Section 101(a)(13)(B) of the Act.

The respondent has identified nothing in the language of the Act to support his contention that Congress understood a grant of asylum to be a form of "admission" into the United States. Instead, he points to language in *Matter of S-A-*, 22 I&N Dec. 1328, 1337 (BIA 2000), where we granted an alien's asylum application and purported to order her "admitted to the United States as an asylee." We acknowledge that the cited language is misleading because it conflates the distinct concepts of "admission to asylum *status*" and "admission *into* the United States."[3] That said, we do not view this passing statement in *Matter of S-A-* as embodying a *holding* that a grant of asylum is tantamount to an "admission" under section 101(a)(13)(A) of the Act. The respondent's status as an inadmissible or deportable alien was not a disputed issue in *Matter of S-A-*, and our statement purporting to "admit" her was therefore gratuitous.

The respondent also seeks to analogize his grant of asylum to a grant of lawful permanent resident status, which we have recognized may qualify as an "admission," even though it does not fit the statutory definition of that term. *See, e.g.*, *Matter of Alyazji*, 25 I&N Dec. at 390-404. We are not convinced by this argument, however, because a grant of asylum is simply not akin to a grant of lawful permanent resident status.

We have found that adjustment of status can be a form of admission because adjustees have always been deemed to be assimilated to the status of aliens admitted at the border with immigrant visas. *E.g.*, *Matter of Smith*, 11 I&N Dec. 325, 326-27 (BIA 1965), *superseded on other grounds by Matter of Hom*, 16 I&N Dec. 112 (BIA 1977). We have also stated that where an alien has not otherwise been admitted to the United States, declining to consider adjustment of status as an "admission" would result in bizarre and absurd consequences, among them being the fact that "many lawful permanent residents would be considered inadmissible, despite their lawful status, based on their presence in the United States without having been admitted." *Matter of Alyazji*, 25 I&N Dec. at 399; *see also Matter of Koljenovic*, 25 I&N Dec. 219 (BIA 2010); *Matter of Rodarte*, 23 I&N Dec. 905 (BIA 2006); *Matter of Rosas*, 22 I&N Dec. 616 (BIA 1999). The

---

[3] The regulation governing adjustment of status for asylees also refers to a grant of asylum as a form of admission. *See* 8 C.F.R. § 1209.2 (2013) ("The provisions of this section shall be the sole and exclusive procedure for adjustment of status by an asylee *admitted under* section 208 of the Act." (Emphasis added.)). That characterization is substantially contradicted, however, by 8 C.F.R. § 1208.14(c) (2013), which clarifies that a grant of asylum does not require a threshold inspection for admissibility, the sine qua non of an "admission," either at a port of entry or through adjustment of status. On the contrary, 8 C.F.R. § 1208.14(c) contemplates that an inspection for inadmissibility will occur only "[i]f the asylum officer does *not* grant asylum." (Emphasis added.)

rationale of our adjustment of status cases does not extend to a grant of asylum, however, because no absurd or bizarre consequences flow in the asylum context from applying the literal language of the "admission" definition. *Cf. Matter of Reza*, 25 I&N Dec. 296 (BIA 2010) (holding that a grant of Family Unity Program benefits was not an "admission," even though it may have conferred a lawful status on the beneficiary).

In conclusion, the respondent's asylum status does not qualify him as an alien "in and admitted" to the United States within the meaning of section 237(a) of the Act. He is therefore subject to removal under section 212(a) as an inadmissible alien, and he was properly charged as such.

## C. Michigan "Youthful Trainee" Adjudication as a "Conviction"

Having concluded that the respondent was properly charged under section 212(a) of the Act, we now turn to the validity of the charges themselves. As noted, the Immigration Judge found that the respondent's 2007 Michigan drug conviction renders him inadmissible under sections 212(a)(2)(A)(i)(I) and (II) of the Act, as an alien convicted of a crime involving moral turpitude and a controlled substance violation, respectively. He was also found inadmissible under section 212(a)(2)(C) as an alien who the Attorney General knows or has reason to believe is or has been an illicit trafficker in any controlled substance. On appeal, the respondent's sole argument is that the conviction does not qualify as a "conviction" at all because it resulted in a "youthful trainee" designation rather than a judgment of guilt. We disagree with that assertion.

In *Matter of Devison*, 22 I&N Dec. 1362 (BIA 2000), we held that the term "conviction" under section 101(a)(48)(A) of the Act, 8 U.S.C. § 1101(a)(48)(A) (Supp. IV 1998), does not encompass any State court adjudication which corresponds to a determination of juvenile delinquency under the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031–5042 (1994 & Supp. II 1996) ("FJDA"). In order for a State youthful offender disposition to be analogous to an FJDA adjudication, however, it must be civil in nature and must be such that it can neither be deemed a "conviction" ab initio nor ripen into a conviction upon the occurrence or nonoccurrence of subsequent events. *See Matter of Devison*, 22 I&N Dec. at 1371. As the United States Court of Appeals for the Sixth Circuit has recognized, the Michigan "youthful trainee" procedures at issue here do not conform to these FJDA requirements. *Uritsky v. Gonzales*, 399 F.3d 728, 734–35 (6th Cir. 2005). The respondent maintains that *Matter of Devison* should be reexamined, but we conclude that it was properly decided and we decline his request to reconsider it. Accordingly, we conclude that the

respondent's "youthful trainee" adjudication under Michigan law qualified as a conviction for immigration purposes.

### D.  Aggravated Felony and Particularly Serious Crime

We now turn to the respondent's eligibility for relief from (or protection against) removal.  As we noted earlier, the Immigration Judge found the respondent ineligible for asylum and withholding of removal on the ground that the offense underlying his 2008 Michigan conviction for delivery of marijuana was an "aggravated felony" and a "particularly serious crime." Apart from his contention that a Michigan youthful trainee adjudication is not a conviction for immigration purposes, which we have rejected, the respondent has not disputed that he was convicted of an aggravated felony.

We note, however, that during the pendency of this appeal the Supreme Court decided *Moncrieffe v. Holder*, 133 S. Ct. 1678, which pertains to the "aggravated felony" status of certain small-scale marijuana distribution offenses that were not for remuneration.  We find that *Moncrieffe* necessitates a remand for the Immigration Judge and the parties to reconsider the aggravated felony and particularly serious crime issues.  The Immigration Judge should also consider what impact, if any, *Moncrieffe* has on the issue of termination of asylum and on the respondent's removability under section 212(a)(2)(C) of the Act.

### E.  Convention Against Torture

The respondent also applied for protection under the Convention Against Torture below, but the Immigration Judge denied that application, concluding that the respondent had not established that he will more likely than not be "tortured" in Albania.  Under the Convention Against Torture, "torture" means:

> (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

*Matter of J-E-*, 23 I&N Dec. 291, 297 (BIA 2002); *see also* 8 C.F.R. § 1208.18(a) (2013).

The respondent's application for Convention Against Torture protection is based on his fear of harm at the hands of members of the Albanian Socialist Party, who the respondent believes have a lingering grievance against his family (particularly his sister and his father) because of their support of the rival Albanian Democratic Party during the late 1990s.  As

the Immigration Judge determined, however, the respondent has adduced no credible evidence to suggest that Socialist Party members commit acts of torture against political rivals in present-day Albania. Nor has the respondent demonstrated that any Albanian public official would instigate, consent to, or acquiesce in such torture, should it occur. In this regard, we note, as did the Immigration Judge, that the Albanian Government has been controlled by the Albanian Democratic Party since 2005. While we have no wish to minimize the respondent's fear of returning to Albania, his claim is too speculative to warrant a grant of protection under the Convention Against Torture. Accordingly, the respondent's request for such protection will be denied.

### F. Adjustment of Status and Other Relief

Although he did not seek adjustment of status below, the respondent claims on appeal that he should be allowed to apply for adjustment under section 209(b) of the Act in conjunction with a waiver of inadmissibility under section 209(c). On remand, the Immigration Judge should determine whether, in light of *Moncrieffe v. Holder*, 133 S. Ct. 1678, the respondent is eligible for such relief or remains inadmissible under section 212(a)(2)(C) of the Act—a ground of inadmissibility that cannot be waived under section 209(c).

## III. CONCLUSION

In conclusion, we agree with the Immigration Judge that the respondent is removable on the section 212(a)(2)(A) charges and that he did not establish eligibility for protection under the Convention Against Torture. Nevertheless, we find it necessary to remand the record so the Immigration Judge can decide in the first instance whether the respondent's existing asylum status—conferred in 2004—can and, if so, should be terminated. Upon resolving that issue, the Immigration Judge should then conduct such further proceedings and enter such further orders as she deems appropriate under the circumstances with respect to the respondent's applications for asylum and withholding of removal, as well as his potential eligibility for adjustment of status.

**ORDER:** The appeal is dismissed in part.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for a determination whether the respondent's asylum status may be terminated and for the entry of such further orders as may be appropriate in light of that determination.