[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13105

_____

Agency No. A089-427-907


NIDAL KHALID NASRALLAH,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 7, 2020)

**ON REMAND FROM THE
SUPREME COURT OF THE UNITED STATES**

Before WILLIAM PRYOR, Chief Judge; TJOFLAT and GILMAN,[*] Circuit Judges.

GILMAN, Circuit Judge:

On February 14, 2019, we denied a petition for review from Nidal Khalid Nasrallah, a native and citizen of Lebanon. *Nasrallah v. United States Attorney General*, 762 F. App'x 638 (11th Cir. 2019), *rev'd sub nom. Nasrallah v. Barr*, 140 S. Ct. 1683 (2020). Nasrallah, whom the Board of Immigration Appeals (BIA) determined had committed a "crime involving moral turpitude," sought withholding of removal and protection under the Convention Against Torture (CAT). His petition raised numerous arguments, including that (1) the immigration judge (IJ) acted with prejudicial bias, (2) the BIA erred in determining that Nasrallah's conviction constituted a "crime involving moral turpitude," (3) the BIA erred in concluding that Nasrallah committed a "particularly serious crime," and (4) the BIA erred in overturning the IJ's determination that Nasrallah was eligible under the CAT for a deferral of removal. After we denied in part and dismissed in part Nasrallah's petition, the Supreme Court took up only the last of these issues.

In addressing Nasrallah's CAT claim, we relied on *Cole v. United States Attorney General*, 712 F.3d 517 (11th Cir. 2013), which held that 8 U.S.C.

---

[*] Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

§§ 1252(a)(2)(C) and (D) preclude judicial review of factual challenges to a CAT order in cases where a noncitizen has committed a crime specified in § 1252(a)(2)(C). Because of a circuit split regarding this issue, the Supreme Court granted Nasrallah's petition for certiorari.

The Supreme Court resolved the issue in favor of Nasrallah. *Nasrallah*, 140 S. Ct. at 1694. Most Courts of Appeals had agreed with the holding in *Cole*, but the Seventh and Ninth Circuits held to the contrary. *Id.* at 1689. The Supreme Court determined that the minority's interpretation was correct because "[a] CAT order is distinct from a final order of removal and does not affect the validity of a final order of removal," and because §§ 1252(a)(2)(C) and (D) preclude review of factual challenges only to final orders. *Id.* at 1694.

Based on the Supreme Court's ruling, we now need to consider Nasrallah's factual challenge to the CAT order. The remaining issue before us is therefore whether substantial evidence supports the BIA's determination that Nasrallah would not likely be singled out for torture if he is removed to Lebanon. For the reasons set forth below, we conclude that the BIA's factual determination is adequately supported by the record.

## I.    BACKGROUND

The overall facts of this case, as stated in *Nasrallah*, 762 F. App'x at 640–42, remain the same. Nasrallah was born in Lebanon in 1989. After becoming a

3

lawful permanent resident of the United States, he was convicted of receiving stolen property, in violation of 18 U.S.C. § 2315. The Department of Homeland Security (DHS) then initiated removal proceedings against Nasrallah, who responded by applying for withholding of removal and CAT protection.

Nasrallah's application asserted that he feared torture by members of Hezbollah and ISIS in Lebanon because he is a member of the Druze religious minority and because he now has ties to America. He described one past interaction with Hezbollah in support of this claim. Specifically, Nasrallah alleged that he and a friend encountered two Hezbollah militants on a mountain in Lebanon in 2005. The militants had shot their guns in the air and shouted for Nasrallah and his friend to stop. Nasrallah, in fleeing, jumped off a cliff and severely injured his back.

Aside from this specific incident, Nasrallah described only a general fear of torture upon removal to Lebanon. He asserted that residents and citizens of the United States are "often kidnapped and killed" by Hezbollah and that ISIS and Hezbollah both posed threats to members of the Druze community. Nasrallah also contended that the Lebanese government has little power over Hezbollah and ISIS.

Reviewing DHS's appeal from the IJ's decision granting Nasrallah deferral of removal under the CAT, the BIA determined the record did not support a finding that Nasrallah would more likely than not be tortured if returned to

4

Lebanon.  It therefore ordered Nasrallah removed.  Nasrallah then filed a timely petition for review.

## II.    ANALYSIS

### A.    Standard of review

We review administrative factual findings under the deferential substantial-evidence standard. *Rivera v. United States Attorney General*, 487 F.3d 815, 820 (11th Cir. 2007).  Findings of fact may be reversed only if the record compels a reversal. *Id.*

### B.    Deferral of removal

"An [applicant] is entitled to CAT protection if he is 'more likely than not to be tortured in the country of removal.'"  *Jean-Pierre v. United States Attorney General*, 500 F.3d 1315, 1323 (11th Cir. 2007) (quoting 8 C.F.R. § 208.16(c)(4)).  Torture is defined as:

> (1) [A]n act causing severe physical or mental pain or suffering;
> (2) [that is] intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

*Matter of V-X-*, 26 I. & N. Dec. 147, 153 (BIA 2013) (citing 8 C.F.R. § 1208.18(a)).

"[T]he tortuous act 'must be specifically intended to inflict severe physical or mental pain or suffering.'"  *Jean-Pierre*, 500 F.3d at 1320 (quoting 8 C.F.R.

5

§ 1208.18(a)(5)) (emphasis removed).  Evidence relevant to the possibility of future torture includes, but is not limited to:

> (i)    Evidence of past torture inflicted upon the applicant;
>
> (ii)   Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
>
> (iii)  Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
>
> (iv)   Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 1208.16(c)(3).

The BIA determined as a matter of law that Nasrallah's prior encounter with the two Hezbollah militants did not constitute past torture under the CAT due to a lack of evidence that the militants specifically intended to inflict severe pain or suffering upon him.  We agreed with the BIA's determination in our prior opinion, *Nasrallah*, 762 F. App'x at 644, and we continue to do so here.

Turning to Nasrallah's other arguments regarding the likelihood of future harm, the BIA acknowledged the evidence of anti-Western terrorist activity and of crimes against the Druze community in Hezbollah-controlled areas of Lebanon. Nasrallah also identifies religious violence against the Druze in nearby Syria and Iraq.  We concur with the BIA's determination, however, that this evidence does not support a finding that Nasrallah would likely be singled out for torture in

6

Lebanon. *See Jean-Pierre*, 500 F.3d at 1324 (explaining that evidence of generalized mistreatment is insufficient to show that a petitioner would more likely than not be tortured if removed).

Furthermore, Nasrallah returned to Lebanon in 2008 for "a couple of weeks" to attend a funeral. That Nasrallah voluntarily returned to Lebanon and was not harmed by Hezbollah or other actors strongly undermines his argument that he would more likely than not be tortured if removed to that country. *See Gomez v. United States Attorney General*, 447 F. App'x 932, 936 n.2 (11th Cir. 2011) ("[T]he fact that [petitioner] returned to Colombia from the United States on two occasions after the alleged events took place does not support—indeed, it strongly undermines—a conclusion that he had a well-founded fear of future persecution."). We also note that Nasrallah remained in Lebanon without incident for many months immediately following his encounter with the two Hezbollah militants. In sum, there is substantial evidence that Nasrallah would not likely be tortured upon his return to Lebanon.

**PETITION DENIED.**