**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAUL QUIJADA CORONADO, *Petitioner*, v. ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 11-72121 <br><br> Agency No. A012-632-641 <br><br> ORDER AND AMENDED OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
July 8, 2013—Pasadena, California

Filed March 14, 2014
Amended July 18, 2014

Before: Fortunato P. Benavides,[*] Jay S. Bybee, and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen

---

[*] The Honorable Fortunato P. Benavides, Senior Circuit Judge for the
U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

## SUMMARY[**]

### Immigration

The panel amended its opinion filed on March 14, 2014, and denied in part, granted in part, remanded in part and dismissed in part Raul Quijada Coronado's petition for review of the Board of Immigration Appeals' decision finding him inadmissible and denying cancellation of removal.

The panel held that the BIA did not err in finding Coronado inadmissible based on his conviction for possessing methamphetamine, in violation of California Health & Safety Code § 11377(a). The panel held that § 11377(a) is a divisible statute under *Descamps v. United States*, 133 S. Ct. 2276 (2013), and in applying the modified categorical approach found that Coronado was convicted of possessing a controlled substance listed in the Federal Controlled Substances Act. The panel also held that the BIA failed to address Coronado's due process claims alleging ineffective assistance of counsel and bias by the immigration judge, and remanded to the BIA for consideration of those claims in the first instance.

The panel dismissed for lack of jurisdiction Coronado's claim that the BIA violated his right to equal protection because detained aliens like himself, unlike non-detained aliens, are barred from establishing genuine rehabilitation, generally required for a grant of cancellation. The panel found that Coronado's argument was merely an attempt to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

contest the weight the BIA assigned to his sobriety while in detention, one of many factors the BIA considered in making its non-reviewable discretionary determination.

## COUNSEL

Bradley J. Hamburger (argued), Theane Evangelis Kapur, and Brandon S. Dimond, Gibson, Dunn & Crutcher LLP, Los Angeles, California, for Petitioner.

Jessica R. C. Malloy (argued), Trial Attorney; Stuart F. Delery, Acting Assistant Attorney General; Paul Fiorino, Senior Litigation Counsel; and Katherine A. Smith, Trial Attorney, United States Department of Justice, Civil Division, Washington, D.C., for Respondent.

## ORDER

The opinion filed on March 14, 2014, and appearing at 747 F.3d 662, is amended. The superseding amended opinion is filed concurrently with this order.

With these amendments, the panel has voted to deny the petition for panel rehearing. Judge Bybee and Judge Nguyen have voted to deny the petition for rehearing en banc, and Judge Benavides has so recommended. The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on en banc rehearing. *See* Fed. R. App. P. 35(f).

The petition for panel rehearing and rehearing en banc is **DENIED.** No further petitions for rehearing or rehearing en banc will be entertained.

---

**OPINION**

NGUYEN, Circuit Judge:

Raul Quijada Coronado petitions for review of the Board of Immigration Appeals' ("BIA") decision finding him inadmissible and denying his application for cancellation of removal. Coronado argues that the BIA erred in concluding that he had suffered two prior convictions for possession of a controlled substance prohibited under the Federal Controlled Substances Act ("CSA"), 21 U.S.C. § 802. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II). Coronado further argues that the BIA erred in failing to address his constitutional claims.

We hold that the statute under which Coronado was convicted, California Health & Safety Code § 11377(a), is a divisible statute, and thus, we apply the modified categorical approach in analyzing Coronado's prior convictions. *See Descamps v. United States*, — U.S. —, 133 S. Ct. 2276, 2281 (2013) (stating that the modified categorical approach applies only to prior convictions under a "divisible" statute, one that "sets out one or more elements of the offense in the alternative"). Under that approach, the government satisfied its burden of proving that Coronado was twice convicted of possessing methamphetamine, a controlled substance listed in the CSA. Therefore, the BIA did not err in finding Coronado inadmissible based on his prior convictions.

However, because the BIA failed to address Coronado's due process claims, which allege ineffective assistance of counsel and bias by the immigration judge ("IJ"), we remand to the BIA for consideration of these claims in the first instance.   We dismiss Coronado's unexhausted equal protection claim for lack of jurisdiction.

## Background

## I

Coronado, a native and citizen of Mexico, became a legal permanent resident of the United States in 1961.  In 1998, he was charged in state court with possession of methamphetamine in violation of California Health & Safety Code § 11377(a).  According to the state court's certified electronic docket in Case No. 8LC01036, he pleaded guilty to "Count (01)," the only charge in the criminal complaint.  In December 2006, the court entered judgment against Coronado "as to Count (01)" (the "2006 Conviction").

On September 15, 2008, Coronado applied for admission to the United States after making a trip to Mexico.  Upon checking his criminal records, Border Patrol officers learned of the 2006 Conviction.  On that same day, Coronado was paroled into the United States, and the Department of Homeland Security ("DHS") served him with a Notice to Appear.  In May 2009, DHS served him with a Form I-261, which alleged, among other things, that Coronado was subject to removal due to his conviction in 2006 for possession of methamphetamine.

In December 2009, while in removal proceedings, Coronado was again charged in state court with possession of

methamphetamine in violation of California Health & Safety Code § 11377(a). According to the court minutes in Case No. JCF24680, on March 23, 2010, Coronado pleaded guilty to "Count 1: HS11377(A)," the only charge in the criminal complaint (the "2010 Conviction").

## II

### A

During his removal proceedings, Coronado denied having been convicted of methamphetamine possession. To prove the 2006 Conviction, the government submitted the criminal complaint and the certified electronic docket of that case. Further, to prove the 2010 Conviction, the government submitted documents that included the criminal complaint and the court minutes of that case.

The IJ found Coronado inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II) due to his convictions for possession of a controlled substance listed in the CSA. Further, after weighing the relevant factors, the IJ denied Coronado's application for cancellation of removal.

Appearing pro se, Coronado appealed to the BIA, which affirmed the IJ's finding that Coronado was inadmissible based on his prior drug convictions. The BIA also affirmed the IJ's denial of cancellation of removal on the ground that Coronado's "undesirability as a permanent resident" outweighed the positive equities. Coronado timely petitioned for review.

**B**

In his opening brief to this court, Coronado did not challenge the use of the modified categorical approach with regard to his prior convictions.  Instead, he argued that the BIA erred because the charging papers alone were insufficient to prove that he was convicted of possessing a controlled substance listed in the CSA.

While Coronado's petition for review was pending, the Supreme Court issued a decision in *Descamps v. United States*, 133 S. Ct. 2276, which clarified the circumstances in which the modified categorical approach may be applied. The parties filed letters pursuant to Federal Rule of Appellate Procedure 28(j), taking contrary positions as to the applicability of the modified categorical approach to Coronado's state court convictions.  The government argued that § 11377(a) is a divisible statute, whereas Coronado contended that the statute is not necessarily divisible.

**Jurisdiction and Standard of Review**

We have jurisdiction to review "constitutional claims or questions of law raised upon a petition for review."  8 U.S.C. § 1252(a)(2)(D); *see also Cheuk Fung S-Yong v. Holder*, 600 F.3d 1028, 1033 (9th Cir. 2010) (applying 8 U.S.C. § 1252(a)(2)(D)).  Whether Coronado's drug convictions render him inadmissible is a question of law. *See Pagayon v. Holder*, 675 F.3d 1182, 1189 (9th Cir. 2011) (per curiam); *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir. 2004).   Further, Coronado raised several constitutional claims. Accordingly, we have jurisdiction to hear Coronado's petition.

We review questions of law and constitutional claims de novo. *Khan v. Holder*, 584 F.3d 773, 776 (9th Cir. 2009).

## Discussion

## I

Under 8 U.S.C. § 1182(a)(2)(A)(i)(II), "any alien convicted of, or who admits to having committed . . . (II) a violation of (or conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance (as defined in section 802 of title 21), is inadmissible." Here, Coronado challenges the BIA's finding of inadmissibility based on his two prior convictions for possessing methamphetamine, in violation of California Health & Safety Code § 11377(a). Thus, pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II), the government had the burden of proving that Coronado's criminal conviction was for possession of a substance that is listed under California law *and* the CSA schedules. *See Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1077–78 (9th Cir. 2007). If the "full range of conduct" covered by § 11377(a) falls within the CSA schedules, then Coronado's conviction is "categorically a removable offense" and our inquiry is over. *Alanis-Alvarado v. Holder*, 558 F.3d 833, 836 (9th Cir. 2009).

## A

California Health & Safety Code § 11377(a) provides:

> Except as authorized by law . . . every person who possesses any controlled substances which is (1) classified in Schedule III, IV, or V, and which is not a narcotic drug,

(2) specified in subdivision (d) of Section 11054, except paragraphs (13), (14), (15), and (20) of subdivision (d), (3) specified in paragraph (11) of subdivision (c) of Section 11056, (4) specified in paragraph (2) or (3) of subdivision (f) of Section 11054, or (5) specified in subdivision (d), (e), or (f) of Section 11055 . . . shall be punished by imprisonment in a county jail for a period of not more than one year or pursuant to subdivision (h) of Section 1170 of the Penal Code.

By comparison, the CSA defines a "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). In turn, the schedules are codified in 21 U.S.C. § 812 and revised annually in 21 C.F.R. § 1308.01 *et seq*. *See* 21 U.S.C. §§ 802(6), 812(a).

The text of the relevant statutes is not particularly helpful here because both § 11377(a) and the CSA define offenses by reference to other statutes. Nevertheless, as laid out in Appendix 1, the substances barred by § 11377(a) and the CSA are nearly identical. Indeed, khat (*Catha Edulis*) is one of the only substances that violates § 11377(a) but not the CSA.[1] *See* Cal. Health & Safety Code § 11377(a)(5) (prohibiting substances specified in California Health & Safety Code § 11055 (d), (e), or (f)); Cal. Health & Safety Code § 11055(d)(7) (prohibiting "[k]hat, which includes all

---

[1] Chorionic gonadotropin (HGC) (Cal. Health & Safety Code § 11056(f)(32)) is also not listed in the federal schedules. *See* 21 C.F.R. § 1308.13 (Schedule III of the CSA).

parts of the plant classified botanically as Catha Edulis"); *see also*, *e.g.*, *United States v. Hassan*, 578 F.3d 108, 114 (2d Cir. 2008) ("Khat itself is not a controlled substance under United States law."); *United States v. Caseer*, 399 F.3d 828, 833 (6th Cir. 2005) ("[N]either the U.S. Code nor the Code of Federal Regulations . . . refers to . . . *Catha edulis*, commonly known as 'khat.'").

This one difference is sufficient because the "full range of conduct" covered by California Health & Safety Code § 11377(a) does not fall within the CSA schedules, and as such, Coronado's conviction is not a categorically removable offense.[2] Accordingly, we must consider whether we may use the "modified categorical" approach to determine whether Coronado was convicted of a removable offense under 8 U.S.C. § 1182(a)(2)(A)(i)(II). *Cheuk Fung S-Yong*, 600 F.3d at 1029.

**B**

In *Descamps*, the Supreme Court resolved a circuit split regarding whether the modified categorical approach is appropriate when the indivisible elements of a statute target a broader swath of conduct than a corresponding generic offense. 133 S. Ct. at 2283. The Supreme Court answered in the negative, clarifying that the modified categorical approach only "serves a limited function." *Id.* Specifically,

---

[2] We previously determined that California law regulates the possession of several substances that are not similarly regulated by the CSA. *Ruiz-Vidal*, 473 F.3d at 1078. Although *Ruiz-Vidal* reinforces our decision here, we are not bound by that opinion because there, we analyzed California Health & Safety Code §§ 11055(b)(1)(G) and 11033—statutes that are not referenced in California Health & Safety Code § 11377(a). *Id.*

the modified categorical approach "helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Id.* Thus, properly viewed, the modified categorical approach merely enables a court to ascertain the specific element that a defendant was convicted of violating when a statute contains multiple, alternative elements. *See id.* at 2285 (describing the modified categorical approach as a "tool" that permits a court "to find out which [offense] the defendant was convicted of" when a statute contains alternative elements that "effectively create[] 'several different . . . crimes'" (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009))). Divisibility is therefore an "elements-based" inquiry and not a "facts-based" one. *Descamps*, 133 S. Ct. at 2293.

Applying this "elements-based" inquiry to California Penal Code § 459, the burglary statute that was at issue, the *Descamps* Court held that the modified categorical approach could not be used because § 459 was not divisible. *Id.* at 2283. Rather, § 459 merely applied "more broadly than the generic offense." *Id.* While the generic offense required "an unlawful entry along the lines of breaking and entering," the California statute did not. *Id.* at 2285. Having thus drawn a distinction between divisible statutes versus overbroad statutes, the Court held that the modified categorical approach "ha[d] no role to play" in analyzing Descamps's prior conviction. *Id.*

Therefore, as a threshold matter, we must confront the question of whether § 11377(a) is a divisible statute such that the modified categorical approach applies.

## C

Section 11377(a) identifies a number of California drug schedules and statutes and organizes them into five separate groups, which are listed in the disjunctive. Cal. Health & Safety Code § 11377(a). Section 11377(a) criminalizes the possession of any one of the controlled substances identified by reference. *Id.* Unlike the California burglary statute at issue in *Descamps*, § 11377(a) is not merely an indivisible, overbroad statute that lacks an element contained in the corresponding generic federal offense. Rather, by its very terms, § 11377(a) "list[s] potential offense elements in the alternative," *Descamps*, 133 S. Ct. at 2284, some of which are contained in the CSA and some of which are not. Use of the modified categorical approach is therefore appropriate "to determine which alternative element . . . formed the basis of the defendant's conviction." *Id.* at 2284, 2293. Put differently, the modified categorical approach may be used here as part of an elements-based inquiry to ascertain which portion of § 11377(a) Coronado actually pleaded guilty to violating.[3]

Coronado argues that § 11377(a) is not necessarily divisible because statutes can list "alternative means" of satisfying an indivisible set of elements. *See id*. at 2285 n.2, 2290–91. While this may be true as to some statutes, it is not

---

[3] We have treated a similar provision of the California Health & Safety Code as "sufficiently divisible" for purposes of applying the modified categorical approach. *See Cheuk Fung S-Yong*, 600 F.3d at 1034 n.5 (noting that California Health & Safety Code § 11379 is divisible); *see also Cabantac v. Holder*, 736 F.3d 787, 789 n.2 (9th Cir. 2013) (Murguia, J., dissenting) (although undecided, "[i]t appears that § 11377(a) is a divisible statute that permits the application of the modified categorical approach").

the case with regard to § 11377(a). Section 11377(a) identifies a number of controlled substances by referencing various California drug schedules and statutes and criminalizes the possession of any one of those substances. The statute thus "effectively creates 'several different . . . crimes,'" *id*. at 2285 (quoting *Nijhawan*, 557 U.S. at 41), and not separate "means of commission," *id.* at 2291 (internal quotation marks omitted). Indeed, the *Descamps* Court's discussion of a hypothetical state statute criminalizing assault with "any of eight specified weapons" supports such a conclusion because the Court suggested that the listing of *alternative weapons* by such a statute would not render it indivisible. *Id.* at 2290. To the contrary, in such a circumstance, a court could apply the modified categorical approach and "check the charging documents and instructions" to determine which element formed the predicate offense for the conviction. *Id.* The same rationale applies here with § 11377(a) and its listing of alternative controlled substances.[4]

---

[4] Coronado further argues that "the precise controlled substance possessed is not an essential element" of § 11377(a). Neither case he cites supports this contention. *See People v. Palaschak*, 893 P.2d 717, 720–21 (Cal. 1995) (holding that an offender may be convicted of the offense of possessing drugs despite having ingested those drugs); *People v. Martin*, 86 Cal. Rptr. 3d 858, 861–82 (Cal. Ct. App. 2008) (finding no error where the defense failed to object to the specificity of the pleadings and the defendant was not prejudiced by the conflicting references to "cocaine" and "cocaine base" because the penalty of the offense was the same). The jury instructions applicable to this offense also undermine Coronado's argument. *See* CALCRIM No. 2304 (2013); CALJIC 12.00 (2013).

**D**

In applying the modified categorical approach to Coronado's prior convictions, we find that the government met its burden of proving that he was twice convicted of possessing methamphetamine.

Coronado claims that under the modified categorical approach, the only relevant document in each case was the criminal complaint, which alone is insufficient to establish that the controlled substance he possessed was methamphetamine as opposed to a substance not covered by the CSA. However, Coronado ignores the fact that the government may also rely on other "equally reliable" documents to show that he pleaded to the facts alleged in each criminal complaint. In conducting a modified categorical analysis, the court may consider the charging document, the terms of a plea agreement, the transcript of colloquy between the judge and the defendant in which the factual basis for the plea was confirmed by the defendant, and comparable judicial records. *Shepard v. United States*, 544 U.S. 13, 26 (2005). The list of documents in *Shepard* is merely illustrative, and "documents of equal reliability may also be considered." *United States v. Snellenberger*, 548 F.3d 699, 701 (9th Cir. 2008) (en banc) (per curiam). For example, in *Snellenberger*, we decided that a California state court clerk's minute order was "equally reliable" and could be used in applying the modified categorical approach. *Id.* at 701–02.

Similarly here, the certified electronic docket in the 2006 Conviction and the court minutes in the 2010 Conviction are equally reliable to the documents approved in *Shepard*. With regard to the certified electronic docket, California Penal

Code § 1428 permits the clerk to "keep a docket[] instead of minutes" in misdemeanor cases, and where "an entry of any judgment, order or other proceeding in the minutes . . . is required, an entry thereof in the docket shall be made and shall be deemed a sufficient entry in the minutes . . . for all purposes."  Because docket sheets may be kept in lieu of minute orders, they qualify as documents of "equal reliability."  *See Snellenberger*, 548 F.3d at 701; *United States v. Strickland*, 601 F.3d 963, 968 (9th Cir. 2010) (permitting the use of an uncertified docket sheet from a Maryland court).  Likewise, under *Snellenberger*, the court minutes in the 2010 Conviction are equally reliable.

Where the minute order or other equally reliable document specifies that a defendant pleaded guilty to a particular count of a criminal complaint, the court may consider the facts alleged in the complaint.  *Cabantac v. Holder*, 736 F.3d 787, 793–94 (9th Cir. 2013) (per curiam). Applying *Cabantac*, the criminal complaints here, read in conjunction with the docket sheet and minute order, establish that Coronado twice pleaded guilty to possession of methamphetamine.  In the 2006 Conviction, the certified electronic docket shows that Coronado pleaded guilty to count one.  The criminal complaint listed one count and referenced only one controlled substance, namely, methamphetamine.  Likewise, in the 2010 Conviction, the court minutes indicate that Coronado pleaded guilty to count one.  In turn, the criminal complaint described only one count for possession of methamphetamine.

Therefore, the BIA did not err in finding Coronado inadmissible based on two prior convictions for possession of a controlled substance prohibited by California law and the CSA.

**II**

We next consider Coronado's argument that the BIA erred in ignoring his constitutional due process claims. Specifically, Coronado argues that his due process rights were violated because of (1) his former counsel's ineffective assistance and (2) the IJ's bias during the removal proceedings. The BIA addressed neither claim.

In his pro se brief to the BIA, Coronado explicitly stated that he had an "ineffective assistance claim." In addition, he criticized his counsel for failing to "research[] the law and the facts as pertained to his case and present [the case] properly." Coronado also argued that his former counsel "showed incompetence by failing to object to many of the questions and negative facts comments" made by the IJ. Although his pro se brief was inartful, we find that Coronado's complaints about his counsel's deficient performance were sufficient to put the BIA on notice of his claim for ineffective assistance of counsel. *See Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008) (explaining that the exhaustion doctrine is not applied "in a formalistic manner" and requires only that the petitioner put the BIA on notice as to the specific issues so that it has an opportunity to pass on those issues); *Agyeman v. INS*, 296 F.3d 871, 878 (9th Cir. 2002) (holding that pro se claims should be construed liberally).

Coronado next argues that the BIA erred in ignoring his claim that the IJ failed to act as a neutral fact-finder and Coronado was prejudiced because he was prevented from fully presenting his case. In his pro se brief to the BIA, Coronado criticized the IJ, claiming that the IJ "personally attack[ed]" him; appeared to have a "personal vendetta" against him; and took the role of both "the prosecutor and

executioner" by showing that Coronado was "a bad person with a bad moral character." Yet, the BIA inexplicably ignored Coronado's arguments.

The government contends that Coronado failed to exhaust the claim that his former counsel was ineffective. The government does not contend that Coronado's claim that the IJ failed to act as a neutral fact-finder was unexhausted but instead argues that we lack jurisdiction to review the claim because the BIA independently weighed the discretionary factors. We disagree with both of the government's contentions.

The BIA is "not free to ignore arguments raised by a petitioner." *Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005). However, under the ordinary remand rule, "we are not permitted to decide a claim that the immigration court has not considered in the first instance." *Montes-Lopez v. Gonzales*, 486 F.3d 1163, 1165 (9th Cir. 2007) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam)); *see also Barroso v. Gonzales*, 429 F.3d 1195, 1209 (9th Cir. 2005) ("Although it appears that [the petitioner] may well have been denied his statutory right to counsel, it is not for us to determine this question in the first instance." (citing *Ventura*, 537 U.S. at 16)). Accordingly, we remand both claims to the BIA to consider them in the first instance.

## III

Finally, we turn to Coronado's claim that the BIA violated his right to equal protection in denying his application for cancellation of removal.

The IJ denied Coronado's application for cancellation of removal after weighing multiple factors in favor of, and against, the grant of relief. Reviewing the denial of relief de novo, the BIA affirmed. The BIA balanced the positive factors, including Coronado's family ties, long employment history, and long residence in the United States, against the negative factors, including Coronado's long history of drug use, his failure at rehabilitation programs, and the fact that his sobriety in detention was enforced. The BIA concluded that "[g]iven the number and recency of his convictions, his admitted addiction, and his lack of rehabilitation over many years, . . . [the positive factors] do not outweigh the adverse factors evidencing his undesirability as a permanent resident."

On appeal, Coronado argues that the BIA violated his right to equal protection because detained aliens like himself—unlike non-detained aliens—are barred from establishing their genuine rehabilitation, which is ordinarily a prerequisite to the granting of cancellation of removal.

Coronado mischaracterizes the BIA's analysis. In concluding that he failed to establish meaningful rehabilitation, the BIA did not rely solely on the fact that his current sobriety in detention was enforced, but also on the fact that he had failed at prior rehabilitation programs. Thus, although Coronado claims an "equal protection violation," his challenge to the BIA's denial of relief is not in fact a colorable constitutional claim or question of law over which we could exercise jurisdiction. *See* 8 U.S.C. § 1252(a)(2)(D) (providing this court with jurisdiction over "constitutional claims or questions of law raised upon a petition for review"); *see also Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001) ("[A] petitioner may not create the jurisdiction that

Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb."). Rather, Coronado's argument, properly considered, is merely an attempt to contest the weight the BIA assigned to his sobriety while in detention, which was one of the many factors the BIA considered in deciding whether to grant him cancellation of removal. We have no jurisdiction to review such discretionary determinations under 8 U.S.C. § 1252(a)(2)(B)(i). *See Martinez-Rosas v. Gonzales*, 424 F.3d 926, 930 (9th Cir. 2005) (recognizing that we lack jurisdiction to review the agency's discretionary determination regarding the granting of cancellation of removal).

### Conclusion

The petition for review is **DENIED** in part as to the BIA's determination that Coronado is inadmissible due to his convictions for possession of methamphetamine; **GRANTED** in part and **REMANDED** as to Coronado's due process claims; and **DISMISSED** in part as to Coronado's equal protection claim.

The parties shall bear their own costs on appeal.

**Appendix 1**

**California Health and Safety Code § 11377(a)(1)**

| CALIFORNIA | FEDERAL |
|---|---|
| Schedule III (§ 11056) | generally* 21 C.F.R. § 1308.13 |
| Schedule IV (§ 11057) | generally 21 C.F.R. § 1308.14 |
| Schedule V (§ 11058) | generally 21 C.F.R. § 1308.15 |

   * California Schedules III–V are nearly identical to the federal Schedules III–V.[5] However, there are five substances that are enumerated in a different portion of California's schedules than their federal counterpart:

| CALIFORNIA | FEDERAL |
|---|---|
| § 11056(b)(5) | 21 C.F.R. § 1308.14(f)(5) |
| § 11056(c)(11) | 21 C.F.R. § 1308.11(e)(1) |
| § 11056(d)(1) | 21 C.F.R. § 1308.13(f)(1) |
| § 11057(b)(c)(3) | 21 C.F.R. § 1308.14(g)(2) |
| § 11058(d) | 21 C.F.R. § 1308.13(e)(2)(i) |

---

   [5] As previously noted, chorionic gonadotropin (HGC), which is listed in California Schedule III, Cal. Health & Safety Code § 11056(f)(32), is not listed in the federal schedules.

**California Health and Safety Code § 11377(a)(2)**

| CALIFORNIA | FEDERAL |
| --- | --- |
| § 11054(d)(1) | 21 C.F.R. § 1308.11(d)(2) |
| § 11054(d)(2) | 21 C.F.R. § 1308.11(d)(4) |
| § 11054(d)(3) | 21 C.F.R. § 1308.11(d)(7) |
| § 11054(d)(4) | 21 C.F.R. § 1308.11(d)(8) |
| § 11054(d)(5) | 21 C.F.R. § 1308.11(d)(9) |
| § 11054(d)(6) | 21 C.F.R. § 1308.11(d)(10) |
| § 11054(d)(7) | 21 C.F.R. § 1308.11(d)(14) |
| § 11054(d)(8) | 21 C.F.R. § 1308.11(d)(17) |
| § 11054(d)(9) | 21 C.F.R. § 1308.11(d)(18) |
| § 11054(d)(10) | 21 C.F.R. § 1308.11(d)(19) |
| § 11054(d)(11) | 21 C.F.R. § 1308.11(d)(21) |
| § 11054(d)(12) | 21 C.F.R. § 1308.11(d)(22) |
| § 11054(d)(16) | 21 C.F.R. § 1308.11(d)(27) |
| § 11054(d)(17) | 21 C.F.R. § 1308.11(d)(28) |
| § 11054(d)(18) | 21 C.F.R. § 1308.11(d)(29) |
| § 11054(d)(19) | 21 C.F.R. § 1308.11(d)(30) |
| § 11054(d)(21) | 21 C.F.R. § 1308.11(d)(32) |
| § 11054(d)(22) | 21 C.F.R. § 1308.11(d)(33) |

§ 11054(d)(23)                21 C.F.R. § 1308.11(d)(34)

**California Health and Safety Code § 11377(a)(3)**

CALIFORNIA                    FEDERAL

§ 11056(c)(11)                21 C.F.R. § 1308.11(e)(3)

**California Health and Safety Code § 11377(a)(4)**

CALIFORNIA                    FEDERAL

§ 11054(f)(2)                 21 C.F.R. § 1308.11(f)(4)

§ 11054(f)(3)                 21 C.F.R. § 1308.11(f)(7)

**California Health and Safety Code § 11377(a)(5)**

CALIFORNIA                    FEDERAL

§ 11055(d)(1)                 21 C.F.R. § 1308.12(d)(1)

§ 11055(d)(2)                 21 C.F.R. § 1308.12(d)(2)

§ 11055(d)(3)                 21 C.F.R. § 1308.11(f)(8)

§ 11055(d)(4)                 NONE

§ 11055(d)(5)                 21 C.F.R. § 1308.12(d)(3)

§ 11055(d)(6)                 21 C.F.R. § 1308.12(d)(4)

§ 11055(d)(7)                 NONE

| | |
|---|---|
| § 11055(d)(8) | 21 C.F.R. § 1308.11(f)(3) |
| § 11055(e)(1) | 21 C.F.R. § 1308.13(c)(2)(i) |
| § 11055(e)(2) | 21 C.F.R. § 1308.13(c)(2)(iii) |
| § 11055(e)(3) | 21 C.F.R. § 1308.12(e)(4) |
| § 11055(e)(3)(A) | 21 C.F.R. § 1308.11(d)(33) |
| § 11055(e)(3)(B) | NONE |
| § 11055(e)(3)(C) | 21 C.F.R. § 1308.12(e)(4)[6] |
| § 11055(e)(4) | 21 C.F.R. § 1308.12(e)(5) |
| § 11055(e)(5) | 21 C.F.R. § 1308.12(e)(2) |
| § 11055(f)(1) | 21 C.F.R. § 1308.12(g)(1) |
| § 11055(f)(1)(A) | 21 C.F.R. § 1308.12(g)(1)(i) |
| § 11055(f)(2) | 21 C.F.R. § 1308.12(g)(2) |
| § 11055(f)(2)(A) | 21 C.F.R. § 1308.12(g)(2)(i) |
| § 11055(f)(2)(B) | 21 C.F.R. § 1308.12(g)(2)(ii) |

---

[6] The CSA does not cover additional forms of phencyclidine that the Attorney General may add.