Opinion by Judge MILAN D. SMITH, Jr.; Dissent by Judge CALLAHAN.
*701 OPINION
M. SMITH, Circuit Judge:
Jorge Dario Aragon-Salazar (Aragon), a native and citizen of Guatemala, petitions for review of a decision by the Board of Immigration Appeals (BIA), affirming the Immigration Judge’s (IJ) denial of his application for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub.L. No. 105-100, 111 Stat. 2160, 2193-2201 (1997). The IJ and BIA denied Aragon’s application on the ground that his false testimony prevented him from establishing good moral character during the seven-year period required by NACARA in order to be eligible for special rule cancellation of removal. As a matter of first impression in our circuit, we hold that an application for special rule cancellation of removal under NACARA is not a continuing application, and that the seven-year period during which good moral character is required under NACARA ends on the date of the filing of the application. In this case, if Aragon gave false testimony, he did so after the requisite seven-year period. Accordingly, we grant the petition for review, and remand for further proceedings.
LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND
I. Statutory Structure
Section 203 of NACARA establishes rules to permit certain classes of aliens, including some from Guatemala, to apply for relief from removal under what is titled “Special Rule for Cancellation of Removal.” NACARA, Pub.L. No. 105-100, 111 Stat. 2160, 2193-2201 (NACARA § 203). In enacting NACARA, Congress relaxed the requirements of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, 110 Stat. 3009, for cancellation of removal for such aliens by applying the less stringent pre-IIRIRA requirements. See Barnos v. Holder, 581 F.3d 849, 857 (9th Cir.2009); Munoz v. Ashcroft, 339 F.3d 950, 955-56 (9th Cir.2003).
Under § 309(f) of IIRIRA, as amended by NACARA § 203, the Attorney General has discretion to “cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence” an alien who, inter alia:
(i) is not inadmissible or deportable under paragraph (2) or (3) of section 212(a) or paragraph (2), (3), or (4) of section 237(a) of the Immigration and Nationality Act and is not an alien described in section 241 (b)(3)(B)(i) of such Act;
(ii) has been physically present in the United States for a continuous period of not less than 7 years immediately preceding the date of such application;
(iii) has been a person of good moral character during such period; and
(iv) establishes that removal would result in extreme hardship to the alien or to the alien’s spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.
IIRIRA § 309(f), as amended by NACARA § 203, amended by Pub.L. No. 105-139, 111 Stat. 2644, 2644-45 (1997).[1] No *702 person “who has given false testimony for the purpose of obtaining any [immigration] benefits” during the relevant period for which good moral character is required shall be found to be a person of good moral character. 8 U.S.C. § 1101(f)(6).
If an application for NACARA special rule cancellation of removal was treated as a continuing application, an applicant would be required to show good moral character up to the point that a final administrative decision is issued in order to meet NACARA’s requirement. See In re Garcia, 24 I. & N. Dec. 179, 183 (B.I.A. 2007). If, however, an application for NA-CARA special rule cancellation of removal is not a continuing application, then the seven-year good moral character period requirement ends on the date the applicant files the application.
II. Factual and Procedural History
Aragon is a native and citizen of Guatemala, who entered the United States without inspection in 1988. On June 13, 2006, Aragon filed an application for special rule cancellation of removal under NACARA. On September 13, 2006, Helen Maudeen Wauku, an asylum officer, interviewed Aragon. After the interview, the Department of Homeland Security (DHS) declined to grant Aragon’s application because it appeared from Aragon’s testimony that he was barred from relief as a person who ordered, incited, assisted or otherwise participated in the persecution of others under INA § 240A(c)(5), 8 U.S.C. § 1229b(c)(5). DHS instead referred Ara-gon’s application to an IJ. Aragon subsequently submitted an updated NACARA application at the request of the IJ.
On January 7, 2009, Aragon testified about his role in the Guatemalan army from 1983 to 1988 and stated on direct examination that his army unit had arrested one guerrilla. On cross-examination, Aragon testified that his unit had arrested guerrillas on approximately two other occasions, but that he was not present diming those arrests. Aragon denied that he stated during his NACARA interview with Wauku that every time his unit engaged in combat, it captured three to six guerillas.
On March 3, 2009, Wauku testified before the IJ about Aragon’s NACARA interview. Reviewing the notes she took during the interview, she testified that Aragon stated during the interview that his unit had captured between three to six guerrillas every six months. Wauku testified that she had concluded after the interview that Aragon had assisted a “persecu-tory army” because he drove troops to areas where “atrocious” conflicts had occurred, and was knowledgeable about catching guerrillas. She stated that she had therefore determined that he was ineligible for NACARA relief due to the persecutor bar, and had referred his application to an IJ.
On March 3, 2009, the IJ denied Aragon’s application for NACARA special rule cancellation of removal. Although the IJ found that Aragon had established the extreme hardship and continuous physical presence requirements, she found that Ar-agon had given false testimony for the purpose of obtaining an immigration benefit, either by fabricating incidents during the NACARA interview to make himself seem more important or by minimizing incidents during the merits hearing to avoid the persecutor bar. Accordingly, the IJ found that Aragon was unable to establish good moral character under 8 U.S.C. § 1101(f)(6). The IJ concluded that Aragon was thus statutorily ineligible for special rule cancellation of removal, and denied his application.
*703 Aragon appealed to the BIA, which held that an application for special rule cancellation of removal is a “continuing” application through removal proceedings. As such, the BIA explained that the seven-year period during which good moral character is required did not end on the date Aragon filed his application, but rather extended until a final administrative decision was issued. The BIA then affirmed the IJ’s finding that Aragon made false statements for the purpose of obtaining special rule cancellation of removal, based on the inconsistencies between his testimony at the merits hearing and the NA-CARA interview. The BIA thus affirmed the IJ’s conclusion that Aragon was statutorily ineligible for special rule cancellation of removal because he could not establish good moral character during the requisite seven-year period. Aragon timely filed this petition for review.
JURISDICTION AND STANDARD OF REVIEW
We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252. We review questions of law de novo, except to the extent that deference is owed to the BIA’s determination of the governing statutes and regulations. Barrios, 581 F.3d at 854.
DISCUSSION
The BIA and the IJ concluded that Aragon presented false testimony during either the NACARA interview or the merits hearing for the purpose of obtaining NACARA special rule cancellation of removal. Because the BIA concluded that an application for NACARA special rule cancellation of removal is a continuing application, it considered these statements, which were made after Aragon filed his application, when determining whether Ar-agon was a person of good moral character.
Aragon argues that a NACARA application is not continuing in nature. Thus, he contends that because his purportedly false statements were made after he filed his application, they should not be taken into account for purposes of making the required good moral character determination. The government counters that we must defer to the BIA’s determination that an application for special rule cancellation of removal is continuing. See Garcia, 24 I. & N. Dec. at 183 (holding, in the context of the continuous physical presence requirement, that an application for NACARA special rule cancellation of removal is a continuing application, and that an applicant can accrue physical presence until the issuance of a final administrative decision); cf. In re Ortega-Cabrera, 23 I. & N. Dec. 793 (B.I.A.2005) (holding that an application for cancellation of removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1) is a continuing application for purposes of evaluating good moral character).
We employ the Chevron two-step framework when reviewing the BIA’s interpretation of its governing statutes. Marmolejo-Campos v. Holder, 558 F.3d 903, 908 (9th Cir.2009) (en banc) (citing Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Accordingly, we must first determine whether “the intent of Congress is clear.” Chevron, 467 U.S. at 842, 104 S.Ct. 2778. “If it is, both [we] and the agency ‘must give effect to the unambiguously expressed intent of Congress.’ ” Marmolejo-Campos, 558 F.3d at 908 (quoting Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778). If, however, the statute is “silent or ambiguous,” we must then determine “whether the agency’s answer is based on a permissible construction of the *704 statute.” Chevron, 467 U.S. at 848, 104 S.Ct. 2778.
“At the first step, we ask whether the statute’s plain terms ‘directly addres[s] the precise question at issue.’” Nat’l Cable & Telecomms. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 986, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (quoting Chevron, 467 U.S. at 843, 104 S.Ct. 2778). “If [we], employing traditional tools of statutory construction, aseertain[ ] that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.” Chevron, 467 U.S. at 843 n. 9, 104 S.Ct. 2778. Said another way, “[t]he starting point for our interpretation of a statute is always its language,” Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 739, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), and “[we] must presume that a legislature says in a statute what it means and means in a statute what it says there,” Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). “When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.” Id. at 254, 112 S.Ct. 1146 (internal quotation omitted).
The relevant portion of NACARA states that the Attorney General has discretion to cancel removal of an alien, who, among other requirements:
(ii) has been physically present in the United States for a continuous period of not less than 7 years immediately preceding the date of such application; [and]
(iii) has been a person of good moral character during such period.
NACARA § 203 (emphasis added).
The plain terms of the statute require that an applicant for NACARA special rule cancellation of removal be a person of good moral character during the requisite period of continuous physical presence, which is “not less than 7 years immediately preceding the date of such application.” NACARA § 203(1)(A)(ii). When must the applicant have “good moral character?” He must have it “during such period,” id. § 203(1)(A)(iii), which clearly refers back to the period of time for which continuous physical presence is required, as stated in NACARA § 203(1)(A)(ii). The plain language of NACARA is thus clear — the period of time for which an applicant must show good moral character refers to the period of seven years “immediately preceding the date of [the NACARA] application,” id. § 203(1)(A)(ii), and ends on the date that application is filed. For this reason, any conduct occurring after the filing of the application is irrelevant to the good moral character determination required under the plain language of the statute.[2] Under the plain terms of NACARA, an application for special rule cancellation of removal is therefore not a continuing application.
The language of the now-repealed suspension of deportation statute, 8 U.S.C. § 1254(a)(1) (1996) (repealed by IIRIRA *705 on September 20, 1996) (emphasis added), provides additional support for our conclusion that the statutory language relevant to special rule cancellation of removal under NACARA unambiguously establishes that it is not a continuing application. To have been eligible for suspension of deportation, an alien must have established, inter alia, that he “[was] physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and ... that during all of such period he was and is a person of good moral character.” Id. (emphasis added); see also 8 C.F.R. § 240.65(b) (requiring that alien “was and is” a person of .good moral character to be eligible for suspension of deportation under NACARA). This language shows that “Congress ... knew how to expand the required period of good moral character beyond the period immediately preceding the date of application by using the expansive language ‘was and is’ rather than the past tense ‘has been,’ ” Cuadra v. Gonzales, 417 F.3d 947, 951 (8th Cir.2005), but did not do so for special rule cancellation of removal. See Conn. Nat’l Bank, 503 U.S. at 253-54, 112 S.Ct. 1146; Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (“[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” (internal quotation omitted)); see also Keene Corp. v. United States, 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (highlighting a court’s “duty to refrain from reading a phrase into the statute when Congress has left it out”).
The government asserted at oral argument that the “date of such application” language in the NACARA special rule cancellation of removal statute is ambiguous.[3] First, the government argued that the NACARA special rule cancellation of removal statute is ambiguous for the same reasons the Seventh Circuit found ambiguity in the cancellation of removal statute, 8 U.S.C. § 1229b(b)(1), in Duron-Ortiz v. Holder, 698 F.3d 523 (7th Cir.2012). In Duron-Ortiz, the Seventh Circuit held that the inclusion of a “stop-time” rule, which provides that any period of continuous physical presence ends “when the alien is served a notice to appear,” 8 U.S.C. § 1229b(d)(1), adds ambiguity to the cancellation of removal statute. Duron-Ortiz, 698 F.3d at 527. The Seventh Circuit explained that this “interplay of the statutory language” creates ambiguity because the stoptime provision renders the “date of [the] application” language superfluous when the notice to appear is served. Id. The Seventh Circuit concluded that “[i]n light of the possible ambiguity the stop-time provision adds to the [cancellation of] removal statute,” it must defer to the BIA’s reasonable interpretation of when an alien must show good moral character for cancellation of removal. Id. However, unlike the provision at issue in Duron-Ortiz, NACARA special rule cancellation of removal does not include such a stop-time rule. See NACARA § 203. Therefore, the ambiguity that the Seventh Circuit described in the cancellation of removal statute is not present in the NACARA special rule cancellation of removal statute.
Second, the government pointed to Aragon’s NACARA application to argue that the statutory language “the date of such application” is ambiguous. See also Gar- *706 da, 24 I. & N. Dec. at 183. The government represented that Aragon had filed two NACARA applications, and claimed that it was therefore unclear to which date the statute refers. Even if we were to consider arguments based on documents extrinsic to the statute in evaluating the statute’s meaning, this argument is plainly incorrect. The record shows that the second application that Aragon submitted was an update to his initial application. Moreover, the DHS notice to Aragon, dated September 13, 2006, which notified him that DHS declined to grant his application after the NACARA interview, specifically stated that it was “not a denial of [his] application,” and that the application would be referred to an IJ. The notice also provided that the IJ may give Aragon permission “to supplement [his] present application.” We see no ambiguity in the language of the statute referring to “the date of such application,” and the government’s attempts to manufacture ambiguity are unpersuasive.[4]
For these reasons, the plain language of the NACARA special rule cancellation of removal statute unambiguously expresses Congress’s intent that the relevant good moral character period is the seven-year period preceding the filing of the application. We therefore hold that an application for special rule cancellation of removal under NACARA is not a continuing application. Because the statutory language is unambiguous, we end our inquiry at Chevron’s first step, and need not reach the question whether the BIA’s approach is based on a permissible construction of the statute. See Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778. This result is consistent with that of the Eighth Circuit in Cuadra v. Gonzales, which is the only other federal appellate decision to address this precise issue. 417 F.3d at 951.
In reaching this result, we acknowledge that it may allow an alien who presents false testimony after his application is filed to nonetheless show good moral character for purposes of special rule cancellation of removal. However, we decline to allow policy considerations to inject ambiguity into the text of an unambiguous statute. Using extrinsic policy considerations to determine whether there is statutory ambiguity is plainly contrary to Supreme Court precedent on both Chevron step one and statutory interpretation more generally. See, e.g., DePierre v. United States, - U.S. -, 131 S.Ct. 2225, 2233, 180 L.Ed.2d 114 (2011) (“That we may rue inartful legislative drafting ... does not excuse us from the responsibility of construing a statute as faithfully as possible to its actual text.”); Conn. Nat’l Bank, 503 U.S. at 253-54, 112 S.Ct. 1146; Chevron, 467 U.S. at 842, 843 n. 9, 104 S.Ct. 2778.
Moreover, our construction of NA-CARA will not lead to the absurd result *707 that an applicant who provides false testimony following the filing of the application will necessarily obtain relief. As the government acknowledges, special rule cancellation of removal is a discretionary form of relief, see NACARA § 203, under which an adjudicator may consider an alien’s false testimony as a discretionary factor, even if the alien can establish good moral character during the requisite seven-year- period under the statute.
Aragon filed his application for special rule cancellation of removal on June 13, 2006. The relevant period during which Aragon must show good moral character is therefore the seven-year period immediately preceding June 13, 2006. Aragon’s purportedly false statements were given during either his NACARA interview on September 13, 2006 or at the merits hearing on January 7, 2009. Both of these dates are outside the relevant time period during which good moral character is required under NACARA § 203. Thus, the IJ and the BIA incorrectly determined that Aragon’s testimony after he filed the NACARA application rendered, him statutorily ineligible for special rule cancellation of removal. Accordingly, we grant the petition for review and remand this matter to the BIA to determine, consistent with this opinion, whether Aragon is eligible for NACARA special rule cancellation of removal.
PETITION FOR REVIEW GRANTED AND REMANDED.

. The incorporation of Immigration and Nationality Act (INA) § 241(b)(3)(B)(i), 8 U.S.C. § 1231(b)(3)(B)(i) into § 309 of IIRIRA bars any alien who "ordered, incited, assisted, or otherwise participated in the persecution of an individual because of that individual’s race, religion, nationality, membership in a particular group, or political opinion” from obtaining special rule cancellation of removal. 8 U.S.C. § 1231(b)(3)(B)(I). This subsection *702 is commonly referred to as the "persecutor bar.”

. Moreover, the phrase "date of such application” suggests a fixed date of the application. NACARA § 203(1)(A)(ii). Unsurprisingly, the agency’s practice has otherwise conformed to the plain language of the statute. For instance, under the applicable regulations, an alien must make an application for special rule cancellation of removal on Form 1-881, which is titled "Application for ... Special Rule Cancellation of Removal.” 8 C.F.R. § 240.63(a). The regulations also specifically provide that an alien must establish that he "has been physically present in the United States for a continuous period of 7 years immediately preceding the date the application was filed ” and that he "has been a person of good moral character during the required period of continuous physical presence." Id. § 240.66(b) (emphasis added).

. The government failed in its brief to clearly articulate how the relevant statutory language is ambiguous. Rather, it focused its argument on how the BIA’s interpretation of the language is a permissible construction of the statute.

. The government also argues that Castillo-Cruz v. Holder, 581 F.3d 1154, 1162 (9th Cir.2009), forecloses Aragon's argument that the period during which good moral character is required for NACARA does not extend until a final administrative decision is issued. Castillo-Cruz, however, cited a BIA decision concluding that applications for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C) are continuing, without considering whether to afford the decision deference under Chevron. Id. We are not bound by this unreasoned conclusion arising in a different context. See In re Wal-Mart Wage & Hour Emp’t Practices Litig., 737 F.3d 1262, 1268 n. 8 (9th Cir.2013) (“Where it is clear that a statement is made casually and without analysis, where the statement is uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel’s full attention, it may be appropriate to re-visit the issue in a later case.” (quoting United States v. Johnson, 256 F.3d 895, 915 (9th Cir.2001) (en banc) (Kozinski, J., concurring))).