# Matter of Mario A. FAJARDO ESPINOZA, Respondent

*Decided June 8, 2015*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A grant of Family Unity Program benefits does not constitute an "admission" to the United States under section 101(a)(13)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(13)(A) (2012), for purposes of establishing that an alien has accrued the requisite 7 years of continuous residence after having been "admitted in any status" to be eligible for cancellation of removal under section 240A(a)(2) of the Act, 8 U.S.C. § 1229b(a)(2) (2012). *Matter of Reza*, 25 I&N Dec. 296 (BIA 2010), reaffirmed. *Garcia-Quintero v. Gonzales*, 455 F.3d 1006 (9th Cir. 2006), not followed.

FOR RESPONDENT: Martin Zaehringer, Esquire, Ventura, California

BEFORE: Board Panel: PAULEY and GREER, Board Members; O'HERRON, Temporary Board Member.

PAULEY, Board Member:

In a decision dated May 7, 2013, an Immigration Judge found the respondent removable under section 237(a)(2)(B)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(B)(i) (2012), as an alien convicted of a controlled substance violation, denied his applications for cancellation of removal and voluntary departure, and ordered him removed from the United States. The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who entered the United States without inspection in 1996. On November 13, 2002, while he was in the United States, the respondent was granted Family Unity Program ("FUP") benefits. His status was later adjusted to that of a lawful permanent resident on April 25, 2005.

On September 4, 2012, the respondent was convicted of possession of a controlled substance in violation section 11377(a) of the California Health and Safety Code, based on a guilty plea to the charge that he committed the offense on June 14, 2011. As a result, the Department of Homeland Security ("DHS") issued a notice to appear on March 11, 2013, charging

the respondent with removability as an alien convicted of a violation of a State law relating to a controlled substance.

The Immigration Judge determined that the respondent was removable based on the conviction documents included in the record. He also concluded that the respondent was ineligible for cancellation of removal because, at the time he committed the removable offense, he had not accrued 7 years of continuous residence in the United States "after having been admitted in any status," as required by section 240A(a)(2) of the Act, 8 U.S.C. § 1229b(a)(2) (2012). The Immigration Judge denied the respondent's request for voluntary departure as a matter of discretion.

The respondent contends that he is not removable as charged because the conviction documents do not establish that he was convicted of a controlled substance violation. He also argues that his grant of FUP benefits in 2002 should constitute an "admission" and that he therefore accrued the requisite continuous residence to establish eligibility for cancellation of removal under section 240A(a)(2) of the Act. Finally, the respondent challenges the Immigration Judge's denial of his request for voluntary departure.

## II. ANALYSIS

### A. Removability

The respondent's conviction record includes a minute order and felony complaint, which establish that he pled guilty to possession of methamphetamine, a federally controlled substance, in violation of section 11377(a) of the California Health and Safety Code. The Immigration Judge concluded that this record supported a finding that the respondent is removable under section 237(a)(2)(B)(i) of the Act as an alien convicted of a controlled substance violation. We agree. *See Coronado v. Holder*, 759 F.3d 977, 984–86 (9th Cir. 2014) (holding that section 11377(a) is divisible and that "[w]here the minute order or other equally reliable document specifies that a defendant pleaded guilty to a particular count of a criminal complaint, the court may consider the facts alleged in the complaint").

### B. Cancellation of Removal

To be eligible for cancellation of removal, the respondent must establish, inter alia, that he "resided in the United States continuously for 7 years after having been admitted in any status." Section 240A(a)(2) of the Act. According to section 240A(d)(1) of the Act, continuous residence is deemed to end when an alien has committed a certain type of

offense that renders him removable. In 2011, the respondent committed a removable offense under section 237(a)(2)(B)(i), which stopped the accrual of his continuous residence. The question before us is whether his period of residence began in 2005, when he adjusted his status, or in 2002, when he was granted FUP benefits.

Although the respondent was present in the United States in 2002, the Immigration Judge determined that his continuous residence did not commence at that time because the grant of FUP benefits does not constitute an "admission" as defined in section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2012).[1] In reaching this conclusion, the Immigration Judge applied our holding in *Matter of Reza*, 25 I&N Dec. 296 (BIA 2010). The respondent contends that *Matter of Reza* was wrongly decided and that we should instead follow *Garcia-Quintero v. Gonzales*, 455 F.3d 1006 (9th Cir. 2006), a decision of the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises. We conclude that our more recent precedent should control in this case.

Prior to *Matter of Reza*, the Ninth Circuit held that a grant of FUP benefits constitutes being "admitted in any status" for purposes of establishing eligibility for cancellation of removal. *Garcia-Quintero v. Gonzales*, 455 F.3d at 1018−20. The focus of the court's decision, which was rendered without the benefit of our reasoning in *Reza*, was more on the question whether a grant of FUP benefits conferred a "status" than on whether it constitutes an "admission." We do not dispute that an alien who was granted FUP benefits has a "status" for immigration purposes. *See Matter of Blancas*, 23 I&N Dec. 458, 460 (BIA 2002) (describing the broad definition of the phrase "in any status," as used in section 240A(a)(2) of the Act). However, we also do not consider the court's finding regarding the term "admission" to have been dictated by the plain or unambiguous language of the statute. *See Garcia-Quintero v. Gonzales*, 455 F.3d at 1018−19.

We respectfully believe that our subsequent precedent decision in *Reza* is reasonable and therefore entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").

---

[1] According to section 101(a)(13)(A) of the Act, "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."

The Supreme Court's analysis in *Chevron* consists of two steps that courts routinely apply when reviewing an agency's interpretation of a statute. First, the court analyzes the statutory language to determine whether it is ambiguous. If the statute allows for more than one reasonable interpretation, the agency's interpretation controls unless it is unreasonable. The Ninth Circuit accords *Chevron* deference to our reasonable legal interpretation of an ambiguous statute only if we publish our decision or rely on a directly controlling published decision. *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010). When a conflict in statutory interpretation exists between Board precedent and case law of the circuit in which the case arises, we, like the courts, must apply the first step of *Chevron* to determine whether to apply the law of the circuit or our own precedent. *See, e.g.*, *Matter of Douglas*, 26 I&N Dec. 197, 199–200 (BIA 2013).

In certain circumstances, we have determined that the statutory scheme as a whole requires that the otherwise clear and unambiguous definition of the terms "admitted" and "admission" in section 101(a)(13)(A) of the Act must yield, specifically where absurd or bizarre results would otherwise ensue. *See Matter of Chavez-Alvarez*, 26 I&N Dec. 274, 276−77 (BIA 2014), *rev'd on other grounds*, *Chavez-Alvarez v. Att'y Gen. of U.S.*, 783 F.3d 478 (3d Cir. 2015). The Ninth Circuit has taken a similar approach. *See, e.g.*, *United States v. Hernandez-Arias*, 757 F.3d 874, 880 (9th Cir. 2014); *Vasquez de Alcantar v. Holder*, 645 F.3d 1097, 1100−01 (9th Cir. 2014) (stating that the definition of the term "admitted" is "clear and unambiguous," but examining "alternative methods" for interpreting the phrase "admitted in any status"). We must decide whether, in order to avoid absurd results, an alien granted FUP benefits should be deemed to have been "admitted in any status," notwithstanding the otherwise clear statutory definition of the term "admitted."

In *Garcia-Quintero*, the Ninth Circuit concluded that being granted FUP benefits constitutes being "admitted in any status."[2] *Garcia-Quintero v. Gonzales*, 455 F.3d at 1020. Although the court expressly considered the "plain meaning" of the phrase "admitted in any status," it did so in conjunction with other factors, including the legislative history of the statute and both our precedent decisions and its own case law, rather than concluding that the plain meaning alone was unambiguous. *Id*. at 1018–19.

Subsequently, in *Garcia v. Holder*, 659 F.3d 1261, 1270 (9th Cir. 2011), a case involving a Special Immigrant Juvenile parolee, the court summarized the factors it considered in *Garcia-Quintero* when determining that an alien's grant of FUP benefits constitutes being "admitted in any status." These factors included that (1) FUP participants are accorded

---

[2]   The Ninth Circuit expressly accorded a low level of deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), to our prior *unpublished* decision in that case.

congressionally mandated benefits; (2) the FUP applies to a narrow class of aliens subject to heightened eligibility requirements; (3) the FUP regulations gave participants an immigration status; and (4) Congress later clarified and reauthorized the FUP. Applying those factors, the Ninth Circuit concluded that being granted parole as a Special Immigrant Juvenile also constituted being "admitted in any status." *Id*. at 1272.

Significantly, the Ninth Circuit explained in *Garcia* that a Special Immigrant Juvenile parolee, like an alien granted FUP benefits, was not "admitted" under the clear and unambiguous definition of that term in section 101(a)(13)(A) of the Act. *Id*. at 1267. However, the court applied its own jurisprudence interpreting the phrase "admitted in any status" in section 240A(a)(2) of the Act, taking into consideration the court's view of congressional intent within the broader statutory scheme of the Act. *Id*. at 1269−72.

We agree with the Ninth Circuit that the "clear and unambiguous" definition of the terms "admitted" and "admission" in the Act must yield in certain circumstances. However, we have only so construed these terms in the context of adjustment of status and then only to avoid absurd or bizarre results. *Matter of Reza*, 25 I&N Dec. at 299–300; *see also, e.g.*, *Matter of Chavez-Alvarez*, 26 I&N Dec. at 276–77 (holding that an alien's adjustment of status constitutes an "admission" for purposes of removability for having been convicted of an aggravated felony after admission). For example, consistent with this narrow tailoring, we have found that a grant of asylum status does not constitute an admission. *Matter of V-X-*, 26 I&N Dec. 147, 150–52 (BIA 2013).

For all of these reasons, we respectfully disagree with the Ninth Circuit's conclusion that the phrase "admitted in any status" includes a grant of FUP benefits. Therefore, in the interest of uniformity, we will apply our holding in *Matter of Reza* nationwide.

Likewise, for the reasons stated in *Matter of Reza* and *Matter of V-X-*, we also disagree with the respondent's alternative contentions that, notwithstanding the statutory requirements of section 101(a)(13)(A) of the Act, other applications or procedures should qualify as admissions, including the filing of a visa petition or the submission of a biometric information form in conjunction with an application for FUP benefits. *See also Guevara v. Holder*, 649 F.3d 1086, 1091 (9th Cir. 2011) (holding that a grant of employment authorization pending adjustment of status does not constitute "admission in any status"); *Vasquez de Alcantar v. Holder*, 645 F.3d at 1102 (holding that approval of a visa petition does not constitute "admission in any status"). As our published decisions demonstrate, adjustment of status may qualify as an "admission" without satisfying the definition in section 101(a)(13)(A) because of the bizarre and

absurd consequences that would otherwise result. *See Matter of Chavez-Alvarez*, 26 I&N Dec. at 276−77; *Matter of V-X-*, 26 I&N Dec. at 150–51; *Matter of Alyazji*, 25 I&N Dec. 397, 399 (BIA 2011); *Matter of Reza*, 25 I&N Dec. at 298; *Matter of Rodarte*, 23 I&N Dec. 905, 908 (BIA 2006); *see also Roberts v. Holder*, 745 F.3d 928 (8th Cir. 2014). That is not the case here.

## C. Voluntary Departure

The Immigration Judge denied the respondent's request for voluntary departure as a matter of discretion. Therefore the respondent's argument regarding his statutory eligibility for voluntary departure does not meaningfully challenge the Immigration Judge's decision. In any case, the respondent's 2012 controlled substance conviction renders him ineligible for voluntary departure under section 240B(b)(1)(B) of the Act, 8 U.S.C. § 1229c(b)(1)(B) (2012), because it precludes him from demonstrating that he has been a person of good moral character for the last 5 years.[3] *See* section 101(f)(3) of the Act.

Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[3] Proceedings before the Immigration Judge started and ended within 1 year of the respondent's 2012 conviction. Therefore, even if the Ninth Circuit were to consider the relevant period of good moral character to be 5 years prior to the respondent's initial voluntary departure request, rather than treating the application as a continuing one, the bar would apply. *Cf. Aragon-Salazar v. Holder*, 769 F.3d 699 (9th Cir. 2014) (requiring an alien to demonstrate good moral character only during the 7-year period before filing an application for special rule cancellation of removal).